# Richmond

## JAMES SPEAR v. COMMONWEALTH OF VIRGINIA.

March 5, 1973.

Record No. 8072.

Present, All the Justices.

*John M. Boswell; Henry W. McLaughlin, III (Wilson & Boswell,* on brief), for plaintiff in error.

*Robert E. Shepherd, Jr., Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

Per Curiam.

James Spear, defendant, was convicted by a jury of murder in the second degree and his punishment was fixed at twenty years in the penitentiary. He was sentenced in accordance with the jury's verdict and is here on a writ of error.

The evidence shows that late in the afternoon of March 23, 1971, St. Louis Farley, William Harris and the defendant purchased a fifth of whiskey from an ABC store. They met Daniel White in his apartment in Blackstone, Virginia, and all four of them commenced drinking. They finished the fifth and defendant, White and one of the

other men left the apartment to obtain a pint of whiskey from a bootlegger.

After obtaining the whiskey they returned to White's apartment, finished it, and talked about getting another pint. It was then approximately 7:00 p.m. Defendant asked White for the change from the $20 bill he had given him to buy the whiskey from the bootlegger. An argument ensued between the two when White told defendant he did not have the change. Farley and Harris entered into the argument in behalf of White, and defendant pulled out a gun and told them to let him and White handle the matter themselves. Shortly thereafter Farley, White and Harris left the apartment and went to Farley's home, which was close by, and defendant went to his own home. White returned to his apartment about 9:30 p.m.

The tenant living in the apartment under White testified that at about 10:00 p.m. he heard the door to White's apartment "bump" and he heard defendant say to White, "Give me my money." A short while later he heard White say, "This is twice you've pulled that pistol on me tonight, I'm going to cut your head off with this knife." The defendant told White to get back and not come any closer. The witness then heard a shot, followed in ten or fifteen seconds by two more shots, and the sound of defendant running down the stairs.

When a deputy sheriff arrived at the apartment to investigate the shooting, he found White lying dead on the floor with a knife in his hand. In looking around the apartment he found two bullet holes in the floor.

There was evidence that the lock on the apartment door was "setting at an angle." A screw that had fallen out of the lock was found nearby.

Defendant testified that he pulled out his gun earlier in the evening because he had had previous trouble with Farley and he "did not trust him." He went to White's apartment at about 10:00 p.m., knocked on the door, and was invited in. The door "dragged" and made a noise when he opened it. He asked White to give him his money. White at first denied that he had any of defendant's money, then said he did, and went into the kitchen. When White came out of the kitchen he had a knife in his hand and blocked the only exit from the apartment. Defendant said that he did not draw his gun until after White had come from the kitchen with the knife. He told White to put the knife down, but White proceeded to advance on him. Defendant fired a shot into the floor, but White did not stop.

He shot into the floor again, then got past White and shot without looking and ran. He did not know that he had hit White when he left the apartment.

■ Defendant contends that the comments and remarks of the trial judge were prejudicial to him.

We have repeatedly said that a judge, in the trial of a case before a jury, should abstain from expressing or indicating by word, deed or otherwise his personal views upon the weight or quality of the evidence. Expressions of opinion, or remarks, or comments upon the evidence which have a tendency to indicate bias on the part of the trial judge, especially in criminal cases, are regarded as an invasion of the province of the jury and prejudicial to an accused. *Skipper* v. *Commonwealth*, 195 Va. 870, 880, 80 S.E.2d 401, 406 (1954).

The record shows that comments and remarks made by the trial judge in the presence of the jury indicated that in his opinion the defendant was the aggressor when he returned to White's apartment the night of the shooting. Such remarks were improper, and although the trial judge did admonish the jury, before reading to them instructions of the court, not to "pay any attention" to what he had said during the trial, the damage already done by his remarks was so prejudicial to defendant's case that he was denied a fair and impartial trial.

■ Defendant contends that the trial court erred in refusing instruction 13-A, setting out his defense of justifiable homicide.

The refused instruction was predicated upon defendant's evidence and was a correct statement of the law. The credibility of defendant's story was for the jury to determine in the light of all the other evidence, and he was entitled to have his version of the evidence presented to them under a proper instruction or instructions. *Hale* v. *Commonwealth*, 165 Va. 808, 813, 183 S.E. 180, 182 (1936); *Campbell* v. *Commonwealth*, 162 Va. 818, 827, 174 S.E. 856, 860 (1934). Thus it was error to refuse the instruction.

Since this case must be reversed and remanded for a new trial, if the Commonwealth be so advised, we do not reach the remaining assignments of error.

*Reversed and remanded.*