## Richmond

FILLMORE B. MARTIN, JR. V. COMMONWEALTH
OF VIRGINIA.

June 10, 1977
Record No. 761048.
Present: All the Justices.

*Benjamin B. Cummings, Jr. (Cummings and Levinson,* on brief), for plaintiff in error.

*Alan Katz, Assistant Attorney General (Anthony F. Troy, Attorney General,* on brief), for defendant in error.

Per Curiam.

On February 7, 1976, Martin D. Taylor was shot and killed. The defendant, Fillmore B. Martin, Jr., admitted the shooting

but claimed the killing was accidental. A jury convicted defendant of second degree murder and fixed his punishment at twenty years in the penitentiary. He was sentenced accordingly. We granted a writ of error limited to the question whether the trial court erred in refusing an instruction relating to the defense of accident.

The evidence shows that on February 7, 1976, the deceased, Taylor, was helping Lydia Quick move from her apartment in the Webster Court Apartment complex in Petersburg. Taylor was carrying boxes containing dishes from the apartment to Miss Quick's automobile at approximately 7:20 p.m. when Miss Quick heard a crash. She immediately went outside and found deceased lying beside the open door of her car. When Miss Quick asked Taylor what was wrong, he said "Angel" shot him.

Officer Farren arrived on the scene shortly thereafter. Taylor was still alive, and he stated to the officer that "Angel shot me, shot me for no reason, and he shot me with a shotgun." Taylor told Farren that he did not know Angel's real name. The victim was then removed to the hospital where he died within a short time.

Upon further investigation, the police ascertained that "Angel" was the alias of the defendant, and they "picked him up" the next morning for questioning. After defendant was given his *Miranda* warnings, he first denied that he knew anything about the killing, but shortly thereafter, after again being fully advised of his rights, gave a signed statement of his involvement. He stated that he found a black sawed-off shotgun in the Byrd Park area of Richmond on the afternoon of February 7; that, while he was on his way to a friend's home in the Webster Court Apartments to ask him to keep the gun for him until he could sell it, he saw Marty Taylor at the apartment complex; that Marty asked him to let him see the shotgun; that, as he was attempting to "break the gun down" to determine if it was loaded before showing it to Marty, it discharged and Marty was shot; that he stood there for a second, then ran to his car and drove away; that he threw the gun in some bushes off the north side of Flank Road; and that he was willing to lead the police to the location of the gun.

A shotgun was later found in the area where defendant had disposed of it, and it was introduced into evidence.

Defendant's testimony at the trial was substantially the same as his written statement. In addition he said that he had known Marty Taylor about two years and when they saw each other, they usually "patted hands." There had been no trouble between them.

The defendant contends that the trial court erred in refusing Instruction A. He argues the instruction was a correct statement of the law, and it was justified under the evidence in this case.

Instruction A reads:

"Where, as in the case at bar, the defense is that the killing was an accident, the defendant is not required to prove this fact, beyond a reasonable doubt, or by a preponderance of the evidence, but the burden is upon the Commonwealth to prove beyond a reasonable doubt that said killing was not accidental; therefore, if after hearing all the evidence, you have a reasonable doubt whether said killing was accidental or that it was intentional, then you should find the defendant, Fillmore Martin, Jr., not guilty."

The Commonwealth, relying on *Poindexter v. Commonwealth,* 213 Va. 212, 191 S.E.2d 200 (1972), and *Skinner v. Commonwealth,* 212 Va. 260, 183 S.E.2d 725 (1971), argues that it was not error to refuse the requested instruction because the instructions granted by the trial court were adequate and fully covered the principles set forth in the refused instruction. The Commonwealth argues further that any error in the refusal of Instruction A was harmless because, although informed of the theory of accidental killing in instructions defining involuntary manslaughter, the jury specifically rejected this theory by convicting the defendant of second degree murder.

■ Where the evidence warrants, an accused is entitled to an instruction presenting his theory of accidental killing as a defense. *Jones v. Commonwealth,* 196 Va. 10, 15, 82 S.E.2d 482, 485 (1954); *Braxton v. Commonwealth,* 195 Va. 275, 277, 77 S.E.2d 840, 841 (1953). *See also Spear v. Commonwealth,* 213 Va. 599, 601, 194 S.E.2d 751, 753 (1973). Here, from the defendant's statement to the police and his testimony at trial, the jury could have found that the killing of Taylor was accidental.

■ In none of the instructions granted by the trial court, however, was the jury told that the burden was upon the Commonwealth to prove the killing was not accidental and that

the jury should acquit the defendant if it entertained a reasonable doubt whether the death was accidental or intentional. It was error to refuse an instruction embodying these propositions. And, although the jury may have rejected the theory of accidental killing by finding the defendant guilty of murder, because this finding may have resulted from the mistaken belief that the burden was upon the defendant to prove the killing was accidental, the error was prejudicial.

For the reasons stated, the judgment is reversed and the case remanded for a new trial.

*Reversed and remanded.*