Frank MOORE, Appellant (Defendant),

v.

The STATE of Wyoming
Appellee (Plaintiff).

No. 95–1.

Supreme Court of Wyoming.

March 12, 1996.

Sylvia L. Hackl, State Public Defender; Deborah Cornia, Appellate Counsel; and Donna D. Hoffdahl, Assistant Public Defender, for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Mary Beth Wolff, Senior Assistant Attorney General, for Appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

TAYLOR, Justice.

Appellant entered a plea of no contest to one count of indecent liberties with a minor. The plea agreement was conditional, reserving the right to challenge the constitutionality of the indecent liberties with a minor statute. We affirm the district court's judgment and sentence.

## I. ISSUES

Appellant states the following issues:

*Argument I*

Is W.S. § 14–3–105 unconstitutional for the failure to separate church and state in its application?

*Argument II*

Was Frank Moore denied his constitutionally guaranteed right to equal protection under the law?

*Argument III*

Is W.S. § 14–3–105 unconstitutionally vague?

Appellee's articulation of the issue is as follows:

I. Whether W.S. § 14–3–105 is unconstitutional as violative of the principles of separation of church and state, equal protection or vagueness?

## II. FACTS

In late 1993, appellant, Frank Moore (Moore), engaged in a series of assignations with KJ. At the time, Moore was thirty years old and KJ was a sixteen year-old girl. Moore capitalized upon the vulnerability of KJ's history of having been sexually abused compounded by KJ's alienation from her mother, who neither knew nor approved of the "relationship."

Moore transported KJ across a number of state lines, ostensibly for the purpose of locating a place where they might lawfully marry. Finding such a legal union to be impossible, the two returned to Wyoming where KJ was placed in protective custody only to discover, shortly thereafter, that she was pregnant. Moore wasted little time in developing another relationship, this time with a seventeen year-old girl.

Two criminal complaints were filed against Moore, each alleging one count of taking indecent liberties with a minor. The first covered the sexual relations with KJ and the next encompassed similar assaults upon KJ's seventeen year-old successor.

Reserving the right to challenge the constitutionality of Wyo.Stat. § 14–3–105 (1994) in this court, Moore was permitted to enter a no contest plea to the indecent liberties charge involving KJ, while the State dismissed the second count, reserving its prerogative to argue sentencing considerations. The result was a sentence of not less than three nor more than five years in the state penitentiary. Moore timely prosecuted his appeal, having been released on bond pending resolution.

## III. STANDARD OF REVIEW

Preliminarily, it should be observed that we have acknowledged the utility and jurisdictional propriety of conditional pleas. *Armijo v. State*, 678 P.2d 864, 867 (Wyo.1984); W.R.Cr.P. 11(a)(2). *See Knox v. State*, 848 P.2d 1354, 1357–58 (Wyo.1993).

A strong presumption of constitutionality favors statutory enactments, with all reasonable doubt resolved in favor of their validity. *Scadden v. State*, 732 P.2d 1036, 1039 (Wyo.1987) (*quoting Keser v. State*, 706 P.2d 263, 266 (Wyo.1985)). Challengers must make their case clearly and beyond a reasonable doubt. *Carfield v. State*, 649 P.2d 865, 870 (Wyo.1982). However, under the constitutions of Wyoming and the United States, our legislature may not promulgate vague or uncertain statutes. *Lovato v. State*, 901 P.2d

408, 412 (Wyo.1995). This requirement of certainty, particularly in the criminal code, is recognized as an element of due process. *State v. Sodergren,* 686 P.2d 521, 527 (Wyo. 1984).

■ In attacking a law as vague or uncertain upon its face, the challenger must show that the statutory proscription defines no standard of conduct at all, thereby failing to give adequate notice to would-be "offenders." *Griego v. State,* 761 P.2d 973, 975 (Wyo.1988). However, when the admitted behavior of a defendant is adequately described by a criminal statute, there can be no question of notice and the defendant becomes obliged to deal with the statute strictly as applied to the particular crime. *Hobbs v. State,* 757 P.2d 1008, 1010–11 (Wyo.1988). This obligation is subject to waiver only when the statute questioned restrains a substantial amount of otherwise constitutionally protected conduct. *Griego,* 761 P.2d at 975.

■ Fundamental notions of judicial restraint and economy counsel our consideration only of those issues necessary to a full and proper resolution of the matter presented for review, absent reason to believe the question is bound to arise again. *State v. Carter,* 714 P.2d 1217, 1220 (Wyo.1986); *Weddle v. State,* 621 P.2d 231, 234 (Wyo. 1980).

## IV. DISCUSSION

Moore's firm conviction that he faces punishment for essentially innocent behavior was materially buoyed by the following exchange between the prosecutor and the district court judge during a hearing to set bond:

THE COURT: * * * You know, Mr. [Prosecutor], I had that case * * * in Lincoln County where there was an abduction of a 13 year old girl—

[PROSECUTOR]: I recall the case, Judge. About five years ago?

THE COURT: Yes.

[PROSECUTOR]: I remember the case.

THE COURT: And the resolution of that criminal case was * * * that everybody agreed they'd get married, and when everybody agreed that was the best thing I signed an Order dismissing the criminal charges.

Mr. Moore, I thought it was a wrong resolution to the case, but it wasn't my child.

■ Moore used the above discussion to support the proposition that marriage to KJ would obviate the charged offense and terminate his prosecution. The frailty of such thinking is underscored by Wyo.Stat. § 6–2–307 (1988), which eliminates marriage as a complete defense to crimes of sexual assault. *Shunn v. State,* 742 P.2d 775, 778 (Wyo.1987). *A fortiori,* as well as pursuant to the plain language of Wyo.Stat. § 14–3–105, the fact of marriage to the victim, by itself, is unavailing as a defense to the crime of taking indecent liberties with a minor.

Moore seized upon an alternative and creative defense in this appeal. He theorizes that uncertainty as to the statutory prohibition makes prosecution for the offense unlikely in the absence of law enforcement authorities who invoke religious values to guide them in arrest and prosecution. Any peace officer who is agnostic or atheistic would, by Moore's theory, turn a blind eye to child molestation, with the upshot being selective enforcement of the law by those who would impermissibly mix religion and the law.

Any discussion of Moore's novel hypothesis must be prefaced by notice that child molestation is universally condemned in our society. The law has always limited such sexual contacts. *Scadden,* 732 P.2d at 1040. We must, however, hasten to acknowledge that societal mores are not a sufficient foundation for criminal conviction in the absence of a clearly stated statutory prohibition, the violation of which is established beyond a reasonable doubt through process due under our laws and constitutions. *State v. A. H. Read Co.,* 33 Wyo. 387, 401, 240 P. 208, 212 (1925).

■ By his plea of *nolo contendere,* Moore admitted all the essential elements of the crime *as charged,* thereby acknowledging sexual intercourse with a minor. *Ochoa v. State,* 848 P.2d 1359, 1361 (Wyo.1993); *Davila v. State,* 831 P.2d 204, 205 (Wyo.1992). We have specifically clarified application of the indecent liberties statute "where an adult

engage[s] in sexual intercourse with a minor." *Ochoa,* 848 P.2d at 1363; *see also McArtor v. State,* 699 P.2d 288, 293 (Wyo. 1985); *Auclair v. State,* 660 P.2d 1156, 1157 n. 1 (Wyo.), *cert. denied,* 464 U.S. 909, 104 S.Ct. 265, 78 L.Ed.2d 249 (1983); and *Ketcham v. State,* 618 P.2d 1356, 1361 (Wyo.1980). Without question, there is no basis for Moore's vagueness challenge to Wyo. Stat. § 14–3–105 *as applied* to his behavior.

With no hope but a *facial* challenge, Moore is left to rummage for some constitutional right which suffers abridgement by enforcement of the statute he violated. In desperation, he seeks to forestall his incarceration by asserting that the statute runs afoul of constitutionally mandated separation of church and state.

 Moore's first amendment arguments are groundless because he cannot demonstrate that the statute, either as applied or in a hypothetical setting, has the effect of impinging upon any actor's free practice of religion or any other fundamental constitutional right. Faced with certain application of the law to *his* activities, and unable to show how Wyo. Stat. § 14–3–105 might work to abridge a substantial amount of constitutionally protected activity, he is foreclosed from mounting a *facial* attack upon the certainty of the statute.

Furthermore, Moore's first amendment argument is premised upon his assumption that Wyo. Stat. § 14–3–105 is vague, *ab initio.* According to his theory, it is that vagueness at the outset which necessitates prosecutorial resort to religious values. Such an argument may only proceed in ignorance of the manifold declarations that Wyo. Stat. § 14–3–105 is sufficiently certain to withstand constitutional muster. *See, e.g., Lovato,* 901 P.2d at 412–13: *Griego,* 761 P.2d at 975–76; *Britt v. State,* 752 P.2d 426, 428 (Wyo.1988); *Ketcham,* 618 P.2d at 1361; and *Sorenson v. State,* 604 P.2d 1031, 1033–35 (Wyo.1979).

Moore also makes an effort to persuade us that the consent of KJ and their declaration of intent to be married denied him equal protection of law, premised on the theory that had they actually been married, no crime would have occurred. We have already eliminated marriage as a plenary defense to violation of Wyo. Stat. § 14–3–105 and note that the consent of KJ was vitiated by her minority and consequent lack of capacity to consent. *Scadden,* 732 P.2d at 1040.

## V. CONCLUSION

The district court's judgment and sentence is affirmed.