Lewis R. PIERSON, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 96–91.

Supreme Court of Wyoming.

March 19, 1998.

Rehearing Denied April 22, 1998.

Sylvia L. Hackl, State Public Defender; Deb Cornia, Appellate Counsel; Michael Dinnerstein and Gerald M. Gallivan, Directors, Wyoming Defender Aid Program; and Dianna Bennett and Karl Linde, Student Interns., for Appellant (Defendant).

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Kimberly A. Baker–Musick, Assistant Attorney General, for Appellee (Plaintiff).

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN, and LEHMAN, JJ.

TAYLOR, Chief Justice.

Appellant was convicted of one count of indecent liberties with a minor in violation of Wyo. Stat. § 14–3–105(a) (Repl.1994). Appellant claims on appeal that the statute, as applied to the facts of his case, is unconstitutionally vague. Appellant also alleges error arising from evidentiary rulings, improper prosecutorial argument, and faulty instructions to the jury.

We find that Wyo. Stat. § 14–3–105(a) is not unconstitutionally vague as applied to the facts of this case. However, due to the misleading and confusing nature of the instructions given the jury, we reverse.

## I. ISSUES

Appellant, Lewis R. Pierson (Pierson), presents the following issues:

I. Would a person of ordinary intelligence know that intercourse with a 16 year old is indecent when intercourse with a 16 year old does not constitute statutory rape and is the application of the indecent liberties statute here therefore unconstitutionally vague?

II. Did the court deny appellant his fundamental constitutional right to present a defense by prohibiting him from presenting evidence relevant to his innocence and by improperly instructing the jury on the law relating to his defense?

III. Did the prosecutor deprive appellant of his due process right to a fair trial by testifying as an unsworn witness, denigrating appellant's right to counsel, asking the jury to use its verdict to send a message to the community, and repeatedly emphasizing irrelevant impact statements of the complainant?

IV. Was appellant deprived of his constitutional right to a fair trial by the introduction of voluminous evidence of misconduct with which appellant was never even charged?

Appellee, the State of Wyoming, responds:

I. Whether Wyo. Stat. § 14–3–105 is unconstitutionally vague?

II. Whether appellant received a fair trial?

## II. FACTS

Pierson met CG while visiting her parents, who were hospitalized after a fire at their business in May 1992. Both Pierson and CG's father were automobile mechanics, and both families were affiliated with the same church. Pierson took CG and her younger brother out for ice cream in order to assuage their concern over their parents' condition. At that time, CG was fifteen years old, and Pierson was thirty-six and married.

After CG's parents returned to work, Pierson frequently stopped by their shop to visit. CG was often present because she was being home-schooled and spent her days assisting at her parents' shop. During this time, Pierson developed a "friendship" with CG as well as her parents, and CG appeared to have a "crush" on Pierson. However, the friendship took a different turn in December 1992, when Pierson told CG he thought "[he was] falling in love with [her]."

CG had never before had a boyfriend, and was not allowed to date. Over the next six months, the relationship between CG and Pierson intensified, fueled by the fact that CG's father moved his business into Pierson's shop in April 1993. Pierson and CG would steal affectionate moments which became increasingly passionate.

Pierson and his wife separated in April 1993. CG celebrated her sixteenth birthday on May 20, 1993. In June 1993, Pierson accompanied CG and her family to a religious meeting in Billings, Montana. There, while parked outside of a shopping mall, the physical relationship between the two escalated to fondling underneath their clothing which ceased when CG's younger brother returned to the truck.

The couple began to discuss the possibility of marriage. Despite CG's expressed wish to

wait until she was eighteen, CG testified that Pierson sent for her birth certificate, impersonating her father on the telephone and forging her father's signature when the birth certificate arrived.

In July 1993, CG's mother discovered a note written by CG to Pierson in which CG referred to him as "lover." CG's parents confronted their daughter and Pierson separately, and forbade CG from further contact with Pierson.

Parental disapproval did not dissuade Pierson from continued meetings with CG at various places outside town, at Pierson's shop and at the home of CG's grandfather. On July 14, 1993, CG telephoned Pierson while she was visiting a friend in Sheridan, Wyoming. The next day, Pierson drove to Sheridan and the two went for a drive in the country. As described by CG, "one thing led to another and it went into sex." · Shortly thereafter, Pierson made several telephone calls in an effort to find a state where sixteen year olds could marry without parental consent.

Testimony established three later sexual interludes, once in July and twice in August; the latest being the charged event on August 29, 1993. The State also introduced evidence of another assignation in early September 1993.

During the first week in September 1993, CG's parents were contacted by local law enforcement regarding the relationship between CG and Pierson. CG's parents confronted her and she admitted she and Pierson were "involved" sexually. CG then gave a statement to the officer who was investigating the allegations. Within days, CG and her family moved to Anaconda, Montana.

Several days after the family moved, hearing that CG may be in physical danger, Pierson submitted to an interview with the investigating officer. Declaring that he and CG were in love, Pierson admitted he was having sexual intercourse with her. Pierson also stated that "people told him he'd be in trouble" and "he knew he was in" serious difficulty.

Having learned from CG her new location, Pierson arrived in Anaconda on September 11, 1993. Pierson enlisted CG's younger brother to bring CG to the motel where he was staying. When CG and her younger siblings appeared at the motel, Pierson told CG that he wanted her to leave with him. At first, CG stated she did not want to hurt her parents; but, "within a matter of minutes," changed her mind and agreed to accompany Pierson.

CG returned to the motel the next morning, and thus began a cross-country sojourn which was to last for fourteen months. During that time, CG wrote numerous letters to her parents, the FBI, the district attorney and other relatives and friends. Among other things, the letters requested that the couple be left alone and promised their return if charges were dropped. CG testified she wrote the letters under duress, and Pierson allowed her no other contact with her family.

CG also testified that through the entire relationship, she was under the domination of Pierson. In contrast, Pierson introduced the testimony of several witnesses who testified that CG invited Pierson's attentions and appeared to be a mature and equal participant during all times they were together.

While in New Jersey, CG and Pierson discovered that Oregon law allows a seventeen year old to marry if he or she has no parent within the state and has resided within the county for six months. The couple went to Oregon where Pierson paid a stranger to sign a false affidavit stating that CG had lived in that Oregon county for six months. They married in Oregon on May 20, 1994, CG's seventeenth birthday.[1] Some time later, the couple returned to New Jersey where they resided with Pierson's relatives.

Pierson was arrested in New Jersey on November 5, 1994 and CG returned to Montana with her parents the next day. Prior to trial, the State filed a Notice of Intent to Offer Evidence of Uncharged Misconduct which identified evidence of five instances of sexual conduct other than the charged event. Pierson was found guilty of one count of

1. At the time of trial, CG had filed for divorce.

indecent liberties with a minor after a three-day trial. This timely appeal followed.

## III. STANDARD OF REVIEW

Pierson's constitutional challenge to Wyo. Stat. § 14–3–105 was not raised at the trial level. Nor was timely objection made to the arguments of counsel or the admission of the uncharged conduct which underlie his claims on appeal. Therefore, these claims must be reviewed under a "plain error" standard. *Britt v. State,* 752 P.2d 426, 428 (Wyo.1988). To establish plain error,

> " '[f]irst, the record must clearly present the incident alleged to be error. Second, appellant must demonstrate that a clear and unequivocal rule of law was violated in a clear and obvious, not merely arguable, way. Last, appellant must prove that he was denied a substantial right resulting in material prejudice against him. *Brown v. State,* Wyo., 736 P.2d 1110, 1115 (1987).' "

*Britt,* 752 P.2d at 428 (*quoting In the Interest of CB,* 749 P.2d 267, 268–69 (Wyo.1988)).

■ Error claimed with respect to jury instructions must be addressed in both a procedural and substantive context:

> From the procedural perspective, substantive review will depend upon an appropriate objection * * *. The purpose is to advise the trial court of the precise nature of the claim so the judicial discretion is appropriately exercised. We consider the charge as a whole and in the light of the entire record from pleadings through argument to the jury. Our goal is to identify any prejudice, and the standard is whether the charge is a comprehensive, balanced and essentially accurate statement of the law that is not likely to confuse or mislead the jury.

*Hatch v. State Farm Fire and Cas. Co.,* 930 P.2d 382, 391 (Wyo.1997). The trial court is given wide latitude in instructing the jury. So long as the jury instructions correctly state the law and the entire charge to the jury adequately covers the issues, reversible error will not be assigned. *Baier v. State,* 891 P.2d 754, 756 (Wyo.1995). An error in one jury instruction may be cured elsewhere in the jury instructions by conveying correct information to the jury " 'in a clear and concise manner so that it is unlikely that an erroneous impression would remain in the minds of the jurors.' " *Vigil v. State,* 859 P.2d 659, 663 (Wyo.1993) (*quoting United States v. Pope,* 561 F.2d 663, 670 (6th Cir. 1977)); *Christian v. State,* 883 P.2d 376, 379 (Wyo.1994).

## IV. DISCUSSION

### A. CONSTITUTIONALITY

■ Pierson claims that the indecent liberties statute, as applied to the facts of his case, is unconstitutionally vague. The indecent liberties statute, Wyo. Stat. § 14–3–105, provides:

> (a) Any person knowingly taking immodest, immoral or indecent liberties with any child or knowingly causing or encouraging any child to cause or encourage another child to commit with him any immoral or indecent act is guilty of a felony, and upon conviction shall be fined not less than one hundred dollars ($100.00) nor more than one thousand dollars ($1,000.00) or imprisoned in the penitentiary not more than ten (10) years, or both.
>
> (b) As used in this section, "child" means a person under the age of eighteen (18) years.

The term "indecent liberties" is defined as actions which "are such as the common sense of society would regard as indecent and improper and a person of ordinary intelligence can weigh contemplated conduct against that prohibition." *Roberts v. State,* 912 P.2d 1110, 1112 (Wyo.1996) (*citing Sorenson v. State,* 604 P.2d 1031, 1034–35 (Wyo.1979)).

■ A statute is unconstitutionally vague "as applied to the facts" if it " 'fails to give a person of ordinary sensibility fair notice that the contemplated conduct is forbidden,' " *Britt,* 752 P.2d at 428 (*quoting Keser v. State,* 706 P.2d 263, 266 (Wyo.1985)), and the facts of the case demonstrate arbitrary and discriminatory enforcement of the statute. *Griego v. State,* 761 P.2d 973, 975 (Wyo.1988) (*quoting Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983)). Pierson contends that a person of ordinary intelligence would not know that

consensual intercourse with a sixteen year old was in and of itself proscribed because the age of consent (for statutory rape purposes) is in fact sixteen years of age.[2] Pierson cites to testimony at trial describing the loving relationship between he and CG, her relative maturity and ability to make adult decisions, and their intention to marry. He argues that because CG was legally old enough to consent to sexual relations, and his intentions were not indecent, he could not know that his conduct was prohibited. However, this argument fails to consider legal precedent and the evidence presented by the State.

We have recognized that an adult may be convicted of taking indecent liberties with a minor who is sixteen years old. *Moore v. State*, 912 P.2d 1113 (Wyo.1996); *Ochoa v. State*, 848 P.2d 1359 (Wyo.1993); *Scadden v. State*, 732 P.2d 1036 (Wyo.1987); *McArtor v. State*, 699 P.2d 288 (Wyo.1985). The State presented evidence that CG was an inexperienced fifteen year old who lived with her parents and had never had a boyfriend at the time Pierson told her he "thought he was falling in love with her." CG testified she was overwhelmed by the married, thirty-six year old's advances and was incapable of dealing with the situation. Pierson acknowledged that he continued to woo CG despite her parents' clear and vigorous disapproval, shortly thereafter initiating sexual intercourse. Pierson had investigated the law and knew that Wyoming did not allow marriage to a person under eighteen without the consent of the minor's parents. Finally, Pierson told the investigating officer that people warned him that "he'd be in trouble."

 The purpose of the indecent liberties statute is to protect the morals of a child, which expressly includes a person under the age of eighteen. *Derksen v. State*, 845 P.2d 1383, 1387 (Wyo.1993) (*quoting Sorenson*, 604 P.2d at 1035). Pierson admits that an adult's conduct in engaging in sexual inter-

course with a sixteen year old can be indecent, immodest and immoral. Under the facts as presented by the State, Pierson had fair notice that a sexual relationship with an inexperienced sixteen-year-old child, consummated in deliberate disregard of her parents' interdiction and while still legally married to another, is prohibited conduct in the state of Wyoming. There is no evidence that the statute was enforced in a discriminatory manner. Therefore, Pierson's constitutional challenge must fail.

**B. JURY INSTRUCTIONS**

Pierson next claims that the instructions to the jury prevented consideration of facts essential to his defense. Pierson's claim is centered on Jury Instruction No. 9, which the district court submitted to the jury over defense counsel's objection. Jury Instruction No. 9 provides as follows:

> It is not a defense to the charge of taking immodest, immoral or indecent liberties with a child under the age of 18 years that the child consented.

Pierson argues that because a sixteen year old may legally consent to sexual intercourse under Wyo. Stat. § 6–2–304, CG's consent has a direct bearing on the relative "indecency" of their activity on August 29, 1993; a factor which was precluded from the jury's deliberations through the jury instructions. The State responds that since we have held that consensual sexual intercourse may be the basis of a conviction under the indecent liberties statute, the consent of the minor is not a material factor which must be submitted to the jury.

 Whether the consent of a sixteen or seventeen-year-old minor may be a material fact for deliberation under the indecent liberties statute is a matter of first impression before this court. Pierson's argument requires an analysis of the interplay between Wyo. Stat. § 6–2–304 and Wyo. Stat. § 14–3–105.[3] Both statutes potentially deal with the

---

**2.** Wyo. Stat. § 6–2–304 (Repl.1988) provides, in relevant part:

(a) Except under circumstances constituting a violation of W.S. 14–3–105, an actor commits sexual assault in the third degree if:

(i) The actor is at least four (4) years older than the victim and who inflicts sexual intrusion on a victim under the age of sixteen (16) years[.]

**3.** This is not the first time we have wrestled with the ambiguities created by the legislature's deter-

same subject matter, sexual intercourse, but differ as to the necessary age of the victim.

Applicable general principles of statutory construction include: if the language is clear and unambiguous, we must abide by the plain meaning of the statute; if a statute is ambiguous, we may resort to general principles of construction; an ambiguous statute is one whose meaning is uncertain and susceptible of more than one meaning; and in a criminal statute, an ambiguity should be resolved in favor of lenity.

*Amrein v. State*, 836 P.2d 862, 864–65 (Wyo. 1992). We construe together all parts of the statutes in pari materia, giving effect to each word, clause, and sentence so that no part will be inoperative or superfluous. *McAdams v. State*, 907 P.2d 1302, 1304 (Wyo. 1995). We will not construe statutes in a manner which renders any portion meaningless or produces absurd results. *Id.*

We look first to the essential elements of criminal liability and the resulting penalty under Wyo. Stat. § 6–2–304. There, if a person more than four years older than a minor, who is fifteen years old or younger, engages in sexual intercourse with the minor, the actor commits third-degree sexual assault. The legislature determined that the maximum sentence for a single conviction is imprisonment for not more than five years. Wyo. Stat. § 6–2–306(a)(iii) (Repl.1988). The first sentence of Wyo. Stat. § 6–2–304 specifically conditions its application to circumstances *other* than those constituting a violation of Wyo. Stat. § 14–3–105. Thus, the legislature has determined that sexual intercourse with a minor fifteen years old or younger, absent other factors, is to be punished by a maximum prison term of five years.

We now turn to the language of Wyo. Stat. § 14–3–105. There, the state must prove that the defendant took "immodest, immoral or indecent liberties" with a minor under the age of eighteen. A single conviction will result in a fine and possibly imprisonment for up to ten years—a punishment more than double the criminal liability for third-degree sexual assault.

 Looking at the statutes together, and the disparity in punishments, it logically follows that the legislature intended criminal liability under Wyo. Stat. § 14–3–105 to entail conduct which is more culpable than the conduct which constitutes guilt under Wyo. Stat. § 6–2–304. We therefore find no logical support for the State's contention that consensual sexual intercourse between an adult and a minor *over* the age of fifteen, without more, is sufficient to convict a defendant of taking indecent liberties with a minor. Indeed, the State's reading would render Wyo. Stat. § 6–2–304 not only superfluous, but misleading.

In so finding, we note that the legislature's express protection of minors under the age of eighteen from indecent liberties makes it equally apparent that the legislature did not intend to cast a minor of sixteen or seventeen years of age to the mercy of society at large. Thus, the legal age of consent designated by Wyo. Stat. § 6–2–304 does not resolve the question whether the victim, *in fact*, gave an informed consent to the conduct charged. Nor does it resolve the question whether the conduct, even with consent, was indecent or immoral.

 In defining the term "indecent liberties," we rely on the "common sense of society." *Sorenson*, 604 P.2d at 1034. As the members of society who will exercise that common sense, the jury must be allowed to consider the totality of the circumstances relating to the culpability of the defendant's conduct. This includes whether the conduct was consensual in those cases where the minor was legally old enough to give an informed consent under Wyo. Stat. § 6–2–304. However, the "consent" must also be considered in light of the facts relevant to the victim's ability, *in fact*, to give an informed consent and the defendant's actions to secure

mination that the age of legal consent to sexual activity differs from the age at which one may be a victim of indecent liberties. *See Campbell v. State*, 709 P.2d 425, 427–29 (Wyo.1985), Rose, J., and Cardine, J., specially concurring; *McArtor,*

699 P.2d at 294–99, Rose, J., and Cardine, J., dissenting; and *Ketcham v. State*, 618 P.2d 1356, 1362–66 (Wyo.1980), Rose, J., and McClintock, J., dissenting.

the consent of the minor. Such circumstances include, but are not limited to, the victim's relative maturity; experience; whether the minor is emancipated; the extent of parental involvement in the minor's decisions; and evidence of the defendant's manipulation or coercion of the minor.

■ This holding in no way vitiates our previous determinations that the consent of the minor is not a complete defense to the charge of taking indecent liberties. In approving Jury Instruction No. 9, the district court expressly relied on the holding in *McArtor*, 699 P.2d 288, where after a trial to the court, McArtor was convicted of one count of taking indecent liberties with a minor. *Id.* at 289. On appeal, McArtor claimed that the sixteen-year-old victim's admission that sexual intercourse was consensual was a complete defense to the charge. He argued that because the victim could consent under Wyo. Stat. § 6–2–304 (statutory rape/sexual assault), the sexual assault provision was a "specific" statute which impliedly repealed or controlled the application of the "general" indecent liberties statute. *McArtor*, 699 P.2d at 294.

Holding that the indecent liberties statute was not controlled by the statutory rape provision, this court specifically noted that McArtor not only engaged in sexual intercourse, but did so under circumstances specifically addressed within the indecent liberties statute in effect at that time:

Beyond that, it is not immediately discernible as to which of the two statutes is more specific. Sexual intrusion or penetration is an element of § 6–2–304 (§ 6–63.5) but is not a necessary element of § 14–3–105 (§ 14–28). Although the latter statute (at the time of the incident) is not limited to parents, guardians and custodi-

ans, the fact that they are specifically mentioned would indicate an intention to place a special onus on those with supervisory authority over minors—as appellant had over the victim in this case.[4]

*McArtor*, 699 P.2d at 293. Thus, because the indecent liberties statute encompassed conduct outside the scope of Wyo. Stat. § 6–2–304, and one was no more "specific" than the other, we concluded that Wyo. Stat. § 14–3–105 was not controlled by Wyo. Stat. § 6–2–304.

Pierson concedes that the consent of a victim over the age of fifteen is not a *complete* defense to the charge of indecent liberties. *Moore*, 912 P.2d 1113; *Ochoa*, 848 P.2d 1359; *McArtor*, 699 P.2d 288.[5] Pierson argues, however, that because the jury was not informed that CG was old enough to consent under Wyo. Stat. § 6–2–304, the jury assumed that the fact that sexual intercourse occurred, of itself, was illegal under Wyo. Stat. § 14–3–105.

■ Jury instructions are written with the particular facts and theories of each case in mind. *Miller v. State*, 904 P.2d 344, 348 (Wyo.1995) (*quoting Gore v. State*, 627 P.2d 1384, 1388–89 (Wyo.1981)). Instructions to the jury are designed to inform the jury about the applicable law so that the jury may apply that law to its own findings with respect to the material facts. *Compton v. State*, 931 P.2d 936, 939 (Wyo.1997); *Brown v. State*, 817 P.2d 429, 439 (Wyo.1991). A jury instruction must leave no doubt as to under what circumstances the crime could be found to have been committed in the particular case. *Compton*, 931 P.2d at 940; *Miller*, 904 P.2d at 348 (*quoting Graham v. United States*, 187 F.2d 87, 90 (D.C.Cir.1950), *cert. denied*, 341 U.S. 920, 71 S.Ct. 741, 95 L.Ed.

---

4. At the time of McArtor's conviction, Wyo. Stat. § 14–3–105 (1977) provided in relevant part:

"It shall be unlawful for any person, including but not limited to parent, guardian or custodian knowingly to take immodest, immoral or indecent liberties * * *."

*McArtor*, 699 P.2d at 290. Defendant was a law enforcement officer in charge of the Sheriff's Office Cadet Program; the victim was a cadet in this program. The incident occurred while the defendant and victim were on patrol. *Id.* at 293–94 n. 2.

5. In *Ochoa*, 848 P.2d 1359 and in *Moore*, 912 P.2d 1113, we did not reach the issue of consent as it relates to *the jury's* determination whether the defendant's conduct was indecent or immoral. In both cases, the defendants pleaded *nolo contendere* to the charges of indecent liberties. Thus, the defendants admitted the essential elements of the charge, i.e., that they had taken indecent liberties, and therefore waived all but jurisdictional issues.

1353 (1951)). We must therefore determine whether the jury instructions left a doubt as to the circumstances under which Pierson could be found to have committed the crime. Review of the trial transcript and the jury instructions as a whole reveals that the jury was not properly instructed in this case.

An initial concern is generated by the remarks of the district judge. At trial, there was conflicting evidence regarding the minor's maturity level and the extent to which her participation was voluntary or coerced. Pierson called Mr. James Tyra as a witness in his defense. Mr. Tyra testified that he had observed Pierson and CG, and they appeared to be a loving couple. However, when defense counsel inquired whether Mr. Tyra had direct experience in his family with people who had married at a younger age, the prosecution objected on the basis of relevancy. In responding to the objection, the following colloquy took place:

[DEFENSE COUNSEL]: If I may, his concern was based upon what society would think; and his concern is based upon his experience in life. The judgment that the jurors make in this thing is about experience in life, and I think it would be fair to put on evidence about—direct evidence, the direct experiences that people have, particularly regarding this, the age that people get married.

THE COURT: *The problem is [defense counsel], we're not talking about a societal standard here. We're talking about one particular incident; and it constitutes a violation of our statutes, so the objection is sustained at this point.*

■ We have recognized that remarks or comments of the district judge may not be as improper as is indicated by the words of the record, "which cannot reflect all of the accompanying subtle factors, such as gestures, facial expressions, actions of counsel, manner in which the comments were delivered, etc." *Phillips v. State*, 597 P.2d 456, 458 (Wyo. 1979). However, the district judge's comments cause two difficulties. First, although the district court correctly ruled that the societal standards regarding marriage were irrelevant, the district court's comment supporting the ruling incorrectly informed the jury that "societal standards" in general were irrelevant. As noted above, the very definition of "indecent liberties" incorporates a societal standard.

Of even more concern is that the jury could have mistaken the district judge's comment to convey the district judge's belief that the State had already proven its case. As we stated in *Anderson v. State*, 27 Wyo. 345, 376, 196 P. 1047, 1057 (1921):

On the contrary, though we do not suppose it was so intended, they [the remarks] might be taken as an intimation that in the mind of the court the crime had been proven against the defendant, and that his statement of the facts of the transaction was not entitled to credit, or was not sufficient to disprove the evidence for the prosecution.

" 'Expressions of opinion, or remarks, or comments upon the evidence which have a tendency to indicate bias on the part of the trial judge, especially in criminal cases, are regarded as an invasion of the province of the jury and prejudicial to an accused.' " *Phillips*, 597 P.2d at 458 (quoting *Spear v. Com.*, 213 Va. 599, 194 S.E.2d 751, 753 (1973)).

■ While the district court's remarks may not require reversal in this case of themselves, the jury instructions did nothing to alleviate the potential confusion.[6] Ostensibly to rebut the inference created by Jury Instruction No. 9, defense counsel submitted

6. The district court also expressed concern with the limiting effect of Jury Instruction No. 9. At the instructions conference, the district court recognized the persuasive nature of defense counsel's argument and, at the end of the conference, stated:

You know, gentlemen, even though this Instruction Number 9 is given by the Court, under the case law and under the statutes, the Court does not believe that the law has created a statutory rape situation with the indecent liberty statute. The Court believes that the Defendant still has an opportunity to argue to the Jury that under the circumstances of this case the Defendant's actions were not immodest, immoral or indecent. So the Court does not believe that the facts before it would allow it under other circumstances to direct a verdict.

two jury instructions unrelated to the offense charged. The first jury instruction submitted by the defense, containing the language of Wyo. Stat. § 6–2–304, without explanation, was properly refused because there was no alternative charge and the submission of this jury instruction may mislead the jury to believe that the third-degree sexual assault statute applied.

██ However, with no objections from counsel, the district court accepted Jury Instruction No. 11 containing Wyo. Stat. § 20–1–102 (1994).[7] Defense counsel explained the purpose of this jury instruction was to show that a sixteen year old may consent to marriage and "there has been so much talk about running away and getting married and whatnot that they [the jury] are bound to want to know exactly what this statute is * * *."

We are at a loss to understand why Pierson proposed, and the district court accepted, this jury instruction without further discussion. The testimony clearly established that Pierson and CG were married in Oregon, under different statutory requirements, almost a year after the charged offense. Jury Instruction No. 11 did not state any law applicable to this case, contained no explanation as to its relevance, and served only to further confuse the jury on the issues and facts to be considered.

The need for clear jury instructions in this case is patently illustrated by the jury's notes to the district court during deliberations. The first note stated:

> Your Honor,
>
> Does the verdict we reach have to be unanimous for both conviction and acquittal, or just for conviction?

The next note inquired:

> Your Honor,

We would like to know if it would be appropriate, that in the case that we find the defendant guilty as charged, that we ask for, or recommend that lieniency [sic] be shown in the sentencing phase of these proceedings.

The circumstances in this case show that several parties contributed to this case being taken as far as it has gone.

Keep in mind that we have not yet made a decision. We simply want to know if this is an appropriate request.

The difficulties encountered by the jury in this case are not surprising in light of the absence of jury instructions which clearly stated the appropriate law. Under the jury instructions as given, the jury was not properly informed as to the circumstances under which Pierson could be convicted of the crime of taking indecent liberties with CG. Although CG's consent was not a complete defense, it was a material factor to be considered in the jury's deliberations when considering whether the State proved Pierson had taken "indecent or immoral" liberties with CG. We find the jury instructions necessarily prejudicial and, therefore, reverse. *Miller,* 904 P.2d at 350; *Vigil,* 859 P.2d at 664.

## C. Uncharged Misconduct and Prosecutorial Argument

Pierson's claims based on the improper admission of uncharged misconduct and prosecutorial impropriety were not presented to the district court. Therefore, we need not address the remaining issues, as the discussion above is dispositive of this appeal and the district court will have an opportunity to address further evidentiary claims should they arise.

## V. CONCLUSION

Wyo. Stat. § 14–3–105 is not unconstitutionally vague as applied to the facts of this

---

7. Jury Instruction No. 11 states:
 You are instructed that W.S. § 20–1–102, Minimum Marriageable Age; Exception, Parental Consent, provides as follows:
 (a) At the time of marriage the parties shall be at least sixteen (16) years of age except as otherwise provided.
 (b) All marriages involving a person under sixteen (16) years of age are prohibited and voidable, unless before contracting the marriage a

judge of a court of record in Wyoming approves the marriage and authorizes the county clerk to issue a license therefor.
 (c) When either party is a minor, no license shall be granted without the verbal consent, if present, and written consent, if absent, of the father, mother, guardian or person having the care and control of the minor. Written consent shall be proved by the testimony of at least one (1) competent witness.

case. However, proper jury instructions should have informed the jury that the alleged consent of the sixteen-year-old minor, while not of itself a complete defense to a charge of taking indecent liberties with a minor, may be relevant to a determination that the defendant has engaged in conduct which the "common sense of society would regard as indecent and improper * * *." *Roberts,* 912 P.2d at 1112. We recognize that in many cases sexual intercourse between a minor and an adult will constitute a violation of that standard, but it is up to the jury to make that determination in light of all the material facts.

Reversed and remanded.

THOMAS, Justice, dissenting, with whom GOLDEN, Justice, joins.

**Stare decisis** /stériy dəáyəs/. Lat. To abide by, or adhere to, decided cases.

BLACK'S LAW DICTIONARY 1406 (6th ed.1990). I am committed to the doctrine of *stare decisis* as a matter of responsible appellate jurisprudence. It is the departure from this doctrine by the majority opinion, without specifically overruling mandatory precedent, that moves me to dissent in this case.

Pierson's conviction in this case should be affirmed, and I dissent from the reversal by the majority premised, as it is, on instructional error. The claim of error in the refusal of the trial court to instruct on WYO. STAT. § 6–2–304 (1988) is simply sophistry designed to avoid the application of mandatory precedent. The result is antithetical to clear rules established by earlier cases, and the majority opinion adopts the contentions of dissenting justices in those earlier opinions as the correct law, without specifically overruling those cases. We have said:

> Our indecent liberties statute clearly proscribes the conduct, sexual intercourse with a minor, engaged in by Ochoa. We have repeatedly interpreted this statute to apply where an adult engaged in sexual intercourse with a minor. *Griego [Griego v. State,* 761 P.2d 973 (Wyo.1988) ], 761 P.2d at 976, citing *McArtor v. State,* 699 P.2d 288 (Wyo.1985); *Auclair v. State,* 660 P.2d 1156 (Wyo.1983); *Ketcham v. State,* 618 P.2d 1356 (Wyo.1980). As we said in

*Griego,* "[t]hese decisions demonstrate that § 14–3–105 applies, without question, to certain activities." 761 P.2d at 976. One of those activities is sexual intercourse with a minor. We hold that our indecent liberties statute is not unconstitutionally vague as applied to Mr. Ochoa's actions.

*Ochoa v. State,* 848 P.2d 1359, 1363 (Wyo. 1993).

In *Ketcham v. State,* 618 P.2d 1356 (Wyo. 1980), this Court did not accept an assertion of implied repeal by implication with respect to WYO. STAT. § 14–3–105 (1994) and the sexual assault statutes. In light of the premises for the decision, however, the arguments of the dissenting members of the court can best be categorized as dictum. In *McArtor v. State,* 699 P.2d 288, 293–94 (Wyo.1985) (footnote omitted) (emphasis added), we held:

> *(d) Appellant contends that the provisions of § 6–2–304, W.S.1977 (§ 6–63.5, W.S.1957) should control over § 14–3–105, W.S.1977 (§ 14–28, W.S.1957) because it is the more specific of the two and they both cover the same subject.*
>
> We have often stated that a special statute will govern where a general statute is inconsistent with a special statute pertaining to the same subject matter. *City of Rock Springs v. Police Protection Association,* Wyo., 610 P.2d 975 (1980); *Department of Revenue and Taxation v. Irvine,* Wyo., 589 P.2d 1295 (1979); *Thomas v. State,* Wyo., 562 P.2d 1287 (1977). However, appellant has not furnished us with any authority reflecting support for application of such rule to this instance. And it must be remembered that such is a rule of construction to which resort is had, as with all other rules of construction, only for the purpose of ascertaining legislative intent. *Wyoming State Department of Education v. Barber,* Wyo., 649 P.2d 681 (1982); *Houghton Brothers v. Yocum,* 40 Wyo. 57, 274 P. 10 (1929). In this instance, the legislative intent to continue the operative functions of § 14–3–105 (§ 14–28) was manifested as noted supra. The propriety of applying any rule of construction to further ascertain legislative intent would seem to be futile.

Beyond that, it is not immediately discernible as to which of the two statutes is the more specific. Sexual intrusion or penetration is an element of § 6–2–304 (§ 6–63.5) but is not a necessary element of § 14–3–105 (§ 14–28). Although the latter statute (at the time of the incident) is not limited to parents, guardians and custodians, the fact that they are specifically mentioned would indicate an intention to place a special onus on those with supervisory authority over minors as appellant had over the victim in this case. Both statutes involve sexual activity, but they are not mutually exclusive. **It is not uncommon for two valid statutes to prohibit the same type of conduct, or for the prosecutor to decide under which statute to charge a defendant.** *Jerskey v. State*, Wyo., 546 P.2d 173 (1976); *State v. Grider*, 74 Wyo. 88, 288 P.2d 766 (1955); see Rules 11 and 12, W.R.Cr.P.

In *Campbell v. State*, 709 P.2d 425 (Wyo. 1985), we dealt only with the definition of the age of a child for purposes of the indecent liberties statute, and the concurring justices merely preserved the position they had espoused in *McArtor*.

In *Rivera v. State*, 840 P.2d 933, 943 (Wyo. 1992) (emphasis added), we compared the indecent liberties statute to the sexual assault statute and said:

We already have noted that, as to each victim, Rivera was charged with violation of §§ 6–2–302(a) and 14–3–105. **These statutes define different crimes.** *McArtor v. State*, **699 P.2d 288 (Wyo.1985). They are intended to suppress different evils; an acquittal and conviction under one does not prevent prosecution under the other.** *Goodman v. State*, 601 P.2d 178 (Wyo.1979). In *Baum v. State*, 745 P.2d 877 (Wyo.1987), we held there is no violation of a defendant's fundamental right to not be placed twice in jeopardy under the Fifth Amendment to the Constitution of the United States or under art. 1, § 11 of the Constitution of the State of Wyoming when conviction and punishment on two counts occurs even though both acts were committed during the same encounter with the victim. Under two separate statutes, two separate criminal acts can be charged, tried, and punished.

Our cases demonstrate, without any equivocation, that the offenses proscribed by Wyo. Stat. § 6–2–304 and Wyo. Stat. § 14–3–105 are distinct from one another. The majority opinion blurs that distinction and suggests that a defense under Wyo. Stat. § 6–2–304 may constitute a partial defense under Wyo. Stat. § 14–3–105, despite our clear rulings that consent is not a defense under that statute. It is apparent that a clear rule of law emanating from *McArtor* has been undercut to a degree that *McArtor* is overruled. Contrary, to the majority opinion, there was no doubt left by the jury instructions as to the circumstances under which Pierson could be found guilty. Sexual intercourse with a child is a violation of the indecent liberties statute. That societal position is not affected by the defense of consent under the sexual assault statutes, and there is no valid purpose to be accomplished in this case, other than attempting to rescue Pierson from the consequences of his conduct proscribed by the indecent liberties statute.

The trial judge in this instance correctly followed *McArtor* in instructing the jury. In effect, he is now being advised to assist the defendant in his argument by instructing the jury that while consent is no defense to the offense charged, it could be a defense to a different offense that was not charged. That result is not consistent with our prior law, and simply leads to confusion in the trial court. Further, it reaches the charging decisions by the prosecuting attorney, a matter that we consistently have held to be protected from the judicial department by the doctrine of separation of powers.

I would affirm Pierson's conviction for the offense of indecent liberties committed against a child.