2005 WY 58

**Derald L. MOE, Petitioner (Defendant),**

v.

**The STATE of Wyoming, Respondent (Plaintiff).**

No. 03–139.

Supreme Court of Wyoming.

May 10, 2005.

Representing Petitioner: Kenneth M. Koski, State Public Defender; Donna D. Do-

monkos, Appellate Counsel; Tina N. Kerin, Senior Assistant Appellate Counsel. Argument by Ms. Kerin.

Representing Respondent: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Dee Morgan, Assistant Attorney General. Argument by Ms. Morgan.

Before HILL, C.J., and GOLDEN, KITE, and VOIGT, JJ., and STEBNER, D.J., Retired.

GOLDEN, Justice.

[¶1] Appellant Derald L. Moe was convicted by a jury of one count of taking immodest, immoral or indecent liberties with a sixteen-year-old girl in violation of Wyo. Stat. Ann. § 14–3–105(a) (LexisNexis 2003), a felony, and was sentenced to two to five years in the Wyoming state penitentiary. He appeals that judgment and sentence, contending that the statute ·is unconstitutional and that he was denied a fair trial.

[¶2] We affirm.

## ISSUES

[¶3] Moe lists these issues:

1. Is W.S. § 14–3–105 facially unconstitutional?

2. Is W.S. § 14–3–105 unconstitutional as applied in petitioner's case?

3. Did the trial court err in refusing to admit the statements of an unavailable witness for the defense, resulting in a denial of petitioner's rights to present his defense and confront witnesses?

4. Did the prosecutor commit misconduct in closing argument?

The State rephrases the issues in this way:

I. Is Wyoming's indecent liberties statute, Wyo. Stat. Ann. § 14–3–105, unconstitutional on its face?

II. Is Wyo. Stat. Ann. § 14–3–105 unconstitutional as applied in this case?

III. Did the trial court abuse its discretion when it refused to admit the hearsay statements of an unavailable witness for the defense?

IV. Did the prosecutor commit misconduct in his closing argument?

## FACTS

[¶4] On October 20, 2002, when Moe was 34 years old and AB was 16 years old, the two had sexual intercourse. Moe lived in a trailer house in Gillette, Wyoming, with another man, Dakota Studie. On October 20, 2002, AB, her brother IB, who was 15 years old, and her two friends, AW, 17, and DE, 15, went to Studie's and Moe's trailer to watch movies. After a while, AW and DE left the trailer; however, AB and IB stayed to watch the movie with Moe ·and Studie. Moe and AB were sitting by each other and some contact occurred. After a time, Moe pushed AB into a bedroom and although she resisted and told him no, he pushed her hands over ·head, used his foot to push down her pants and had intercourse with her. While Moe and AB were in the bedroom, Studie and IB continued to watch the movie, but IB testified that he did not notice anything unusual because he was very interested in the movie.

[¶5] AW and DE returned to the trailer, and eventually AB left with AW. AW testified that AB told her she had sex with Moe and had joked about his "anatomy." Later AB told her other friends and became upset, and AW described AB as distraught and crying as she related the details of the encounter with Moe. AB's distress caused AW to return to the trailer and angrily confront Moe. AW testified that Moe stated to her that the sex had been consensual. When AB returned home, she informed her parents of what had happened, and her mother called police. AB stated to police that the intercourse was nonconsensual and testified that it was nonconsensual although her two accounts differed in the details of the encounter. At the time of her testimony, AB was visibly pregnant with another man's child. Both sides referred to her pregnant condition as evidence of her maturity or the lack of it to legally consent to intercourse.

[¶6] Dakota Studie was listed as a witness for the defense; however, Studie could not be located by the defense and he did not testify at trial. Defense counsel sought to

admit Studie's statements to AW and police where he alleged that AB had led Moe by the hand into the bedroom; however, the trial court ruled those statements were inadmissible hearsay. Moe did not testify at trial, and defense counsel submitted jury instructions that its theory was consent as a defense and totality of the circumstances. A jury convicted Moe of one count of indecent liberties, and this appeal, filed one day late, was accepted on writ of certiorari.

## DISCUSSION

### Standard of Review

 [¶ 7] Moe did not raise the issue of unconstitutionality at the trial level and did not object to the prosecutor's closing argument, and we will apply our plain error standard of review to those issues. *Pierson v. State*, 956 P.2d 1119, 1123 (Wyo.1998). To establish plain error, the record must first clearly present the incident alleged to be error; the appellant must demonstrate that a clear and unequivocal rule of law was violated in a clear and obvious, not merely arguable, way; and appellant must prove that he was denied a substantial right resulting in material prejudice against him. *Id.*

 [¶ 8] A trial court's evidentiary rulings are given considerable deference and will not be disturbed on appeal unless the trial court has abused its discretion. *Kenyon v. State*, 2004 WY 100, ¶ 19, 96 P.3d 1016, ¶ 19 (Wyo.2004). A trial court does not abuse its discretion unless it acted unreasonably and denied the defendant a substantial right. Allegations of prosecutorial misconduct are reviewed with reference to the entire record and hinge on whether a defendant's case has been so prejudiced as to constitute denial of a fair trial. *Mazurek v. State*, 10 P.3d 531, 542 (Wyo.2000).

### Unconstitutionality

 [¶ 9] A statute violates due process under the Fifth and Fourteenth Amendments of the United States Constitution on vagueness grounds and is void if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute, *Giles v. State*, 2004 WY 101, ¶ 11, 96 P.3d 1027, ¶ 11 (Wyo.2004); *Misenheimer v. State*, 2001 WY 65, ¶ 6, 27 P.3d 273, ¶ 6 (Wyo.2001), and violates equal protection if it encourages arbitrary and erratic arrests and convictions. *Misenheimer*, ¶ 6; *Scadden v. State*, 732 P.2d 1036, 1041 (Wyo. 1987). A challenge for vagueness can be a facial challenge or an as-applied-to-the-facts challenge. *Ochoa v. State*, 848 P.2d 1359, 1363 (Wyo.1993). "However, a facial challenge is available in only two situations: (1) when the statute reaches a substantial amount of constitutionally protected conduct, and (2) when the statute is shown to specify no standard of conduct at all." *Id.* If neither of these situations exists, then only an as-applied challenge is available. *Id.*

[¶ 10] On numerous occasions this Court has reviewed cases challenging the indecent liberties statute based on void-for-vagueness grounds, and each time the statute has withstood those challenges. Most recently, we have reached that conclusion in our decision in *Giles*. There, we once again determined that § 14-3-105(a) provides sufficient notice to a person of ordinary intelligence that his conduct is prohibited by statute because the liberties taken "are such as common sense of society would regard as indecent and improper." *Giles*, ¶¶ 21-29. The statute states in pertinent part:

> Except under circumstances constituting sexual assault in the first, second or third degree as defined by W.S. 6-2-302 through 6-2-304, any person knowingly taking immodest, immoral or indecent liberties with any child or knowingly causing or encouraging any child to cause or encourage another child to commit with him any immoral or indecent act is guilty of a felony.

§ 14-3-105(a). Subsection (c) of the statute specifies that "child means a person under the age of eighteen (18) years." § 14-3-105(c).

[¶ 11] Moe contends that the statute is facially unconstitutional for three reasons: first, it gives no or inadequate notice of the type of conduct prohibited and it does not specify a standard of conduct; second, the statute allows arbitrary and discriminatory enforcement; and third, the statute offends due process. These contentions were ad-

dressed and rejected in *Giles.* The doctrine of *stare decisis* requires that we apply *Giles'* analysis and conclusions on the issue of facial vagueness and determine that this issue is settled and warrants no new consideration in this appeal.

▮▮▮▮ [¶ 12] In his unconstitutional as-applied argument, Moe contends that the indecent liberties statute, as applied to the facts of his case, is unconstitutionally vague because the statutory language provided no notice that consensual intercourse with a sixteen year old was criminal behavior because that conduct does not offend the third degree sexual assault statute. In Wyoming, sexual contact with a child under the age of sixteen is felony third degree sexual assault. Wyo. Stat. Ann. § 6–2–304(a)(i) (LexisNexis 2003). Because the victim here was sixteen years old, sexual contact with her did not violate the third degree sexual assault statute. However, we have previously determined that extreme age differences between an adult and a minor over the age of sixteen engaged in consensual sexual activity may still constitute indecent liberties in violation of § 14–3–105(a). *Pierson,* 956 P.2d at 1124. The consent of a minor is not a complete defense to the charge of taking indecent liberties. *Id.* at 1126.

[¶ 13] *Pierson* addressed the contention that, because third degree sexual assault provided an age of consent of sixteen, the indecent liberties statute cannot be applied to an adult's sexual activity with a consenting minor over the age of sixteen. *Id.* at 1124–25. *Pierson* determined that the indecent liberties statute may apply to this conduct; however, *Pierson* limited the statute's reach to those cases where a jury, looking at all of the circumstances, determines that the child's consent was not informed consent or the adult's conduct to secure consent violated indecency standards. *Id.* at 1125–26. Moe's factual situation presents nothing that we have not previously considered and found constitutional, and, once again, we hold that the indecent liberties statute is not unconstitutional.

## *Evidentiary Rulings*

▮▮▮ [¶ 14] Studie was not available to testify at the trial, and defense counsel attempted to elicit the statements Studie made to AW and to police through other witnesses' testimony and police reports. The State objected on grounds of hearsay, and the trial court sustained the objection. Moe now argues the trial court erred in refusing to admit this testimony. After the State objected, Moe made a proffer to the court indicating that AW could testify that Studie had made statements indicating that AB took Moe's hand and led him to the bedroom. The trial court determined the statement did not fall under an exception to the hearsay rule and was inadmissible. Later, the trial court refused to allow a police officer to testify about Studie's statements to the police officer, ruling that these statements were also hearsay not admissible under any exception.

[¶ 15] Moe contends that denying admission of an eyewitness's statements that contradicted AB's description that Moe had coerced her and forced her into a bedroom and that were not available by any other means to show her consent prejudicially denied him his constitutional right to present a defense and requires reversal. The State contends that the district court properly denied admission when Moe failed to prove Studie was unavailable, failed to provide the required notice, failed to demonstrate this same evidence was not provided by other evidence of consent; and failed to demonstrate to the court that Studies' hearsay statements were supported by circumstantial guarantees of trustworthiness. Based upon this last factor, we will agree with the State's position.

▮▮▮ [¶ 16] The relevant portions of W.R.E. 804 state:

(a) *Definition of unavailability.*—"Unavailability as a witness" includes situations in which the declarant:

(1) Is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement; or

(2) Persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so; or

(3) Testifies to a lack of memory of the subject matter of his statement; or

(4) Is unable to be present or to testify at the hearing because of death or then-existing physical or mental illness or infirmity; or

(5) Is absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means.

A declarant is not unavailable as a witness if his exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the witness from attending or testifying.

(b) *Hearsay exceptions.*—The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

\* \* \* \*

(6) Other Exceptions.—A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

"[I]n order for hearsay to be admissible under the catchall exception [Rule 804(b)(6), W.R.E.], certain requirements must be satisfied. First, the declarant must be unavailable. Second, the adverse party must either have been given pretrial notice or a sufficient opportunity to prepare for and contest the admission of the hearsay. Third, the truth of the matter asserted must be evidence of a material fact. Fourth, the hearsay statement must be more probative than any other evidence which could be procured through reasonable efforts. Fifth, and finally, the statement must be supported by circumstantial guarantees of trustworthiness \* \* \*." *Crozier v. State,* 723 P.2d 42, 47 (Wyo.1986) (quoting *Schmunk v. State,* 714 P.2d 724, 738 (Wyo.1986)) (alterations in original). As Moe's roommate and friend, Studie was not a disinterested witness, his statement was not corroborated by any other testimony, and he may have had an incentive to lie to AW when AW confronted Studie in front of Moe either out of fear or friendship and also during the police investigation for fear of implication. These circumstances are not guarantees of trustworthiness that would have allowed proper admission of the testimony, and we find the trial court did not err.

*Prosecutorial Misconduct*

▓▓▓▓ [¶ 17] In his final argument, Moe contends that, viewed in totality, several statements by the prosecutor during closing argument constituted misconduct and reversible error. We review allegations of prosecutorial misconduct by looking at the entire record to determine if the defendant's case has been so prejudiced as to constitute a denial of a fair trial. *Mazurek,* 10 P.3d at 542 (quoting *English v. State,* 982 P.2d 139, 143 (Wyo.1999)). The only objection made during the State's closing argument, which was overruled, was to the prosecutor's inserting his personal beliefs. If the trial court abused its discretion by allowing impermissible argument, we will only reverse if "a reasonable probability exists, absent the error, that the appellant may have enjoyed a more favorable verdict." *Id.* The arguments not objected to are reviewed under our plain error standard. Moe has the burden of proving that a substantial right has been denied him, and, as a result, he has been materially prejudiced. *Mitchell v. State,* 982 P.2d 717, 723–24 (Wyo.1999). As to a party's failing to timely object to an improper closing argument, the appellate threshold for reversal is

"a substantial risk of a miscarriage of justice." *Dice v. State*, 825 P.2d 379, 384 (Wyo. 1992). Reviewing the entire record, we conclude that the prosecutor's comments did not have a deleterious effect on the jury's verdict.

[¶ 18] Moe complains about the following statements made by the prosecutor:

[Prosecutor]: Clearly, I think there is tons of evidence that an indecent liberty occurred here. Everybody agrees that it's an indecent liberty.

* * * *

One of the other items that you can consider is [AB's] level of maturity. And [defense counsel] asked her some questions today about her future plans and her expectations for the future, and having been a person who has kids and confront the—what the future holds when you find out you're expecting a baby, I sat back and had to kind of chuckle because I can imagine at 16 you have those rose-tinted glasses, and they are cranked up to deep rose, and things look perfect. It's not a big deal that I'm pregnant. It's not a big deal I'm going to have a kid. I'm going to live with my parents.

[Defense counsel]: Your Honor, I apologize. I'm going to have to object. He's becoming a witness. He said this a couple times earlier that he maintains, he maintains. He's putting his personal beliefs into his closing, and I'd object to that. The Court: I'm going to overrule the objection.

[Prosecutor]: The—the view that a 16–year–old has when confronted with an event like that is going to be optimistic because that's all 16–year–olds know. They are—they know everything, they've experienced everything, and they're ready to conquer the world. And so is it any surprise that [AB] takes the stand and tells you, I've thought about it all. I know what's coming and by gosh I'm ready.

Does that make her mature? Does that make her experienced, worldly, and able to deal with the rest of her life? Certainly not. We probably all said things like that when we were 16.

During rebuttal closing argument and after directing the jury's attention to the State's exhibit of Moe's statement to police, the prosecutor argued:

So far, so good. Sounds pretty reasonable. Last two words, first sentence of his statement, they were being sexual. It's not the first time or the last time in this statement Mr. Moe tells you that this conduct that he's observing these girls engage in is sexual in nature. It's how he's taking it. He's viewing them not as visitors to his house, not has people that he wants to innocently hang out with and watch movies. He's viewing them as an object that he can have sex with.

And it's not the only time, ladies and gentlemen. You'll read in Mr. Moe's own statement that at one point [AW] goes back into the laundry room and jumps up on the washing machine and she's sitting there and he perceives her to be somewhat distressed, and he walked up and playfully offers to see if she would like him to kick on the spin cycle. Another sexual observation by Mr. Moe.

This is not a situation where Mr. Moe tells you that he was innocently sitting on the couch, watching a movie and he was accosted against his will by this woman. This is a statement by a guy who tells you that from the minute 16–year–old girls walk into his house, he interprets what they do and how they act based upon sex.

And, ladies and gentlemen, I would maintain to you that it's conduct like that and activity like that that makes what Mr. Moe did an indecent and immoral liberty and provides you justification to return a verdict of guilty. 34–year–old men should not be looking at 16–year–old girls and the first thought that comes into his mind is how can I get the spin cycle on my washing machine cranked up so she wants to jump in bed with me. That is illegal, it is inappropriate, and it makes that man guilty. Thank you.

[¶ 19] Moe contends that the first statement constituted improper vouching by the prosecutor and intentionally misled the jury to believe that all authority figures believed an indecent liberty had occurred. Moe ar-

gues that the second part of the argument was intended to disprove evidence of AB's maturity to give consent and the prosecutor improperly discussed his own personal behavior and general beliefs about sixteen-year-olds rather than discussing the evidence of this particular sixteen year old's maturity. Moe also claims that the third part of the argument stated above misstated his statement to police, inaccurately portrayed the evidence as sexual innuendo involving a spin cycle while disregarding Moe's claim that he made the statement to cheer up AW who was upset, inaccurately proclaimed that adult men looking at sixteen year old girls is illegal which also improperly interfered in the jury's function as to what was illegal, and attempted to generate community outrage over Moe's conduct with AB.

[¶ 20] In *Wilks v. State*, 2002 WY 100, ¶ 27, 49 P.3d 975, ¶ 27 (Wyo.2002), we set out principles governing closing arguments. Closing arguments must be based upon the evidence submitted to the jury. The purpose of closing argument is to allow counsel to offer ways of viewing the significance of the evidence. *Id.* at ¶ 31 (quoting *McLaughlin v. State*, 780 P.2d 964, 970 (Wyo. 1989)). Prosecutors, just like defense counsel, may review the evidence and suggest to the jury inferences based thereon. *Id.* There are limits, however, on prosecutor's closing arguments that are designed to insure the fairness of the trial and prevent compromise of the judicial system. We have previously adopted the broad guidelines found in I A.B.A., Standards for Criminal Justice 3–5.8 at 3.87 to 3.88 (2d ed.1980):

(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

(b) It is unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

(c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict."

*Wilks*, ¶ 27.

[¶ 21] Because the goal of the criminal justice system is the attainment of justice, the role of the prosecuting attorney differs from that of an advocate in a civil case. The prosecutor's special role has been described in *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935):

The [prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

The elements of the plain error standard are not met as to Moe's allegations of prosecutorial misconduct in the instant case because the record does not show misconduct. "It is improper for the prosecuting attorney, even in responding to defense arguments, to personally vouch for the credibility of the state's witnesses." *Dysthe v. State*, 2003 WY 20, ¶ 29, 63 P.3d 875, ¶ 29 (Wyo.2003) (quoting *Lane v. State*, 12 P.3d 1057, 1065 (Wyo. 2000)). The rationale for this rule has been stated as follows:

When the prosecutor asserts his credibility or personal belief, an additional factor is injected into the case. This addition-

al factor is that counsel may be perceived by the jury as an authority whose opinion carries greater weight than their own opinion; that members of the jury might be persuaded not by the evidence, but rather by a perception that counsel's opinions are correct because of his position as prosecutor, an important state official entrusted with enforcing the criminal laws of a sovereign state. While the prosecutor is expected to be an advocate, he may not exploit his position to induce a jury to disregard the evidence or misapply the law. *Id. See also Mazurek,* 10 P.3d at 542 ("[I]t is unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence of the guilt of the defendant.").

[¶ 22] Given these guidelines, we conclude that the prosecutor's comments in the present case did not cross the line between legitimate argument and illegitimate vouching for the credibility of the State's witnesses. The prosecutor did not directly state that it was his opinion that the witnesses were credible nor did he give that impression or suggest that the jurors still did not have that determination to make. No personal guarantees were made about the prosecutor's personal beliefs concerning the facts. Our review indicates that the prosecutor stayed within the bounds of arguing acceptable inferences from the evidence, and we find no prosecutorial misconduct.

[¶ 23] The judgment and conviction are affirmed.

KITE, Justice, specially concurring.

[¶ 24] I concur with the majority decision in this matter because I believe this Court's precedent mandates it. However, the issue of the constitutionality of Wyo. Stat. Ann. § 14–3–105 (LexisNexis 2003) is a perennial one. The potential for abuse of the statute exists and may, in the proper circumstances, result in a different conclusion. While the appellant in this case has not provided a record supporting his contention of unequal application of the indecent liberties statute, the possibility of the problems outlined in the dissenting opinion exists. There may be conduct that should be prohibited, but is left

unaddressed in the current sexual assault statutes. Thus, a statute to address that conduct is desirable. Indeed, other states' statutes address those problems with greater clarity, thus avoiding constitutional challenges. *See for instance* Colo.Rev.Stat. §§ 18–3–401 to 405.3 (2001); Mont.Code Ann. § 45–5–625 (2001); Alaska Stat. §§ 11.41.434, 11.41.436, 11.41.438, 11.41.440 (LexisNexis 2001).

[¶ 25] Regardless, it is not the province of the courts to legislate. Therefore, I write separately to urge the legislature to consider the issues raised in the dissent and revise the statute to eliminate the inconsistency between sexual assault and indecent liberties, thus reducing the potential for differing opinions with regard to what constitutes a criminal act.

[¶ 26] Additionally, with regard to this statute, I foresee difficulties and potential jury confusion that may be caused by the instruction suggested by the majority opinion in *Giles v. State,* 2004 WY 101, 96 P.3d 1027, (Wyo.2004), regarding consent. There seems to be little room to reconcile the current statutes and our precedent, which requires the jury to ignore consent if the alleged victim is under the age of sixteen, yet consider the "totality of the circumstances."

VOIGT, Justice, dissenting, with which STEBNER, District Judge, Retired, joins.

[¶ 27] I dissent because I continue to believe that Wyo. Stat. Ann. § 14–3–105(a) (LexisNexis 2003) is unconstitutional, for the reasons set forth in *Giles v. State,* 2004 WY 101, ¶¶ 49–59, 96 P.3d 1027, 1043–46 (Wyo. 2004) (Voigt, J., specially concurring). Furthermore, especially because of the vaporous nature of "indecent liberties" as a crime, I believe it constituted misconduct for the prosecutor to the tell the jury that "[e]veryone agrees that it was an indecent liberty."