2005 WY 149

**Derald L. MOE, Petitioner, (Defendant),**

**v.**

**The STATE of Wyoming, Respondent, (Plaintiff).**

**No. 03–139.**

Supreme Court of Wyoming.

Nov. 23, 2005.

Representing Petitioner: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; Tina N. Kerin, Senior Assistant Appellate Counsel.

Representing Respondent: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Dee Morgan, Assistant Attorney General.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, JJ., and STEBNER, D.J., Retired.

GOLDEN, Justice.

[¶ 1]  A jury convicted 34–year–old Donald L. Moe of one count of taking immodest, immoral or indecent liberties with a 16–year–old girl in violation of Wyo. Stat. Ann. § 14–3–105(a) (LexisNexis 2003), a felony.  Moe received a sentence of two to five years in the state penitentiary.  In his appeal, Moe raised several constitutional issues, a prosecutorial misconduct issue, and several evidentiary rulings issues.  This Court affirmed the judgment and sentence.  *Moe v. State*, 2005 WY 58, 110 P.3d 1206 (Wyo.2005).  Shortly after that opinion was published, Moe filed his Petition for Rehearing in which he asserted that this Court had not addressed one of his arguments challenging the trial court's evidentiary ruling that refused admission of a hearsay statement made by Moe's roommate, Dakota Studie, to AW, one of the 16–year–old victim's friends, sometime after the alleged incident of which Moe was convicted. This Court granted Moe's petition to address the single question whether the hearsay statement made by Studie, who was unavailable at trial, was admissible under W.R.E. 803(1) as a present sense impression.  We hold that it was not.

### FACTUAL CONTEXT

[¶ 2]  In this Court's original opinion in this case, we set out the facts and circumstances of the events of the afternoon of October 20, 2002, when the alleged non-consensual sexual intercourse between Moe and AB occurred.  In order to provide the factual context in which the instant legal issue is framed, we find it useful to relate in more specific detail the events of that afternoon and the events at trial as disclosed by the record.  Around noon that day, AB, her 15–

year–old brother IB, her 17–year–old friend AW, and her 15–year–old friend DE went to the trailer in which Moe and his friend Dakota Studie lived. After a while, AW and DE left the trailer and were gone "probably 30, 40 minutes." Remaining in the trailer were Moe, Studie, AB, and IB. AB and AW had argued previously, and AB was angry and upset. Studie and IB were in the living room watching a movie. Moe and AB were sitting by each other in the living room and some contact occurred. At some point, Moe managed to stand up AB, wrapped his arms around her, pushed her to the kitchen and then down a hallway. She resisted but to no avail. Moe opened the bathroom door, thus shutting off the hallway to his bedroom; AB could not see the living room or kitchen from the hallway because of the open bathroom door. Moe pushed AB into his bedroom and onto his bed; he held her arms above her head and began removing her clothing. AB told Moe to stop, but he did not. IB and Studie remained in the living room. According to AB, she and Moe were in the bedroom for about ten minutes. After the assault, AB returned to the living room and waited for AW and DE to return to the trailer. AW and DE returned about five minutes later.

[¶ 3] As soon as AW and DE returned to the trailer, AW and AB left the trailer, leaving IB, DE, Moe and Studie at the trailer. AW and AB drove to a convenience store to call AB's parents and tell them they would be late; they were supposed to be home by 4:00 p.m., and it was then about 3:50 p.m. At the convenience store, AB told AW about Moe's assault. AW and AB were gone from the trailer for about fifteen to twenty minutes.

[¶ 4] After AW and AB returned to the trailer, AB and DE left the trailer to see AB's friend, Mike. AW and IB remained at the trailer with Moe and Studie. At this time, neither Moe nor Studie said anything about "the incident" to AW and IB. AB and DE went to Mike's home, but he was not there; at this time, AB told DE about Moe's assault. Next, AB and DE went to see AW's friend, Bradley, at his workplace. For about three minutes AB told Bradley about Moe's assault.

[¶ 5] After talking to Bradley, AB and DE drove back to Moe and Studie's trailer to pick up AW and IB. AB, DE, AW, and IB then left the trailer. When they were about one to two blocks away from the trailer, AB became upset, AW asked her what was wrong, and, according to AW, "it took a few minutes" before AB told her what Moe had done. AB got out of the car and walked home. AW turned the car around and returned to Moe and Studie's trailer. At the trailer, AW confronted Moe, and then Studie.

[¶ 6] At trial, Moe's counsel cross-examined AW about her confrontation of Moe and Studie. AW testified that, in the confrontation, Moe denied that AB had told him "no" and said their encounter was consensual. Moe's counsel then asked about AW's confrontational conversation with Studie. AW testified that she turned to Studie and asked, "Tell me what happened." The prosecutor objected, claiming that Studie's statement to AW was inadmissible hearsay. The trial court sustained the objection. Moe's counsel then asked AW what her understanding was, after her conversation with Studie, as to what Studie believed about what happened between Moe and AB. The prosecutor again objected on hearsay grounds, and the trial court sustained the objection. Moe's counsel then told the trial court, "I would suggest that the hearsay is admissible because of declarant unavailable." Moe's counsel told the trial court that he was willing to make an offer of proof as to his investigator's efforts to locate Studie. Moe's counsel said that Studie had told AW, when she confronted him and Moe, that he did not see anything wrong. The trial court said that Studie's statement did not fall within one of the hearsay exceptions.

[¶ 7] The trial court then recessed for thirty minutes. Following the recess, the trial court told the prosecutor and Moe's counsel that it had reviewed W.R.E. 804 and Studie's statement was not an exception to the hearsay rule, and it sustained the prosecutor's objection. Continuing his cross-examination of AW, Moe's counsel asked her whether, when driving away from the trailer, before she returned to the trailer and confronted Moe and Studie, she asked IB what

had happened in the trailer between Moe and AB. AW answered that she had. Moe's counsel then asked her, "After you had that conversation with both of them, what was your impression? Did anything they said make—give the impression that something wrong had happened there?" AW answered, "No."

## DISCUSSION

[¶ 8] In Moe's appellate brief, Moe asserted that Studie's statements to AW were admissible under W.R.E. 803(1) as a present sense impression exception to the hearsay rule. Moe claimed that the trial court made no analysis before ruling that Studie's statements to AW did not fall within the present sense impression exception. There are several reasons why Moe's appellate challenge to the trial court's evidentiary ruling fails.

■ [¶ 9] First, the record clearly shows that in trial Moe failed to raise the present sense impression exception to the hearsay rule. When the trial court sustained the prosecutor's hearsay objection, Moe only told the trial court that "the hearsay is admissible because of declarant unavailable;" Moe then said he was willing to make an offer of proof as to his investigator's efforts to locate Studie. Moe's use of the term "declarant unavailable" seemingly invoked W.R.E. 804 which pertains to hearsay exceptions in situations in which the declarant is unavailable. That the trial court understood Moe was invoking W.R.E. 804 is confirmed by the trial court's telling counsel, following a thirty minute recess, that it had reviewed W.R.E. 804 and had concluded that Studie's statement did not fit one of the exceptions under that rule. At no time did Moe invoke the present sense impression exception under W.R.E. 803(1). It is settled law that a proponent of evidence has the burden to apprise the trial court that a rule of evidence permits the admission of that evidence. *Vigil v. State*, 926 P.2d 351, 358 (Wyo.1996).

■ [¶ 10] Second, on appeal Moe failed to analyze the issue under our plain error standard of review, the elements of which are well-settled and need not be stated here. That failure aside, Moe's appellate position on the present sense impression exception is not supported by cogent argument or pertinent authority. The most that Moe offers in his brief, at page 34, is "[t]he statements of Studie should have been admissible under W.R.E. 803(1) (availability of the declarant immaterial) as a present sense impression, because [AW] was asking Studie immediately what was going on...." Then, at pages 36–37, Moe reiterates that Studie's statements to AW "qualified as a present sense impression," and then simply repeats the fact of AW's confrontation of Studie. There is perhaps no rule path in this Court's general appellate jurisprudence as well worn as the one that states it is inadequate on appeal simply to allude to an issue. An appellant must make a good faith attempt to relate the applicable law to the facts. *Duke v. State*, 2004 WY 120, ¶¶ 49, 54, 99 P.3d 928, 946, 947 (Wyo.2004); *Kipp v. Brown*, 750 P.2d 1338, 1341 (Wyo.1988). Moe's attempt on this issue falls far short of the mark.

■ [¶ 11] Third, on the merits of the issue, there can be no doubt that Studie's statements to AW when she confronted him do not meet the requirements of a present sense impression exception under W.R.E. 803(1). That rule defines a present sense impression to be "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Parsing this rule, we first identify the several elements which the proponent of a statement must prove:

1) the declarant perceived an event or condition;

2) the declarant utters a statement which describes or explains the event or condition perceived;

3) the declarant utters that descriptive or explanatory statement while perceiving the event or condition or immediately after perceiving the event or condition.

[¶ 12] According to Moe, AB's consent to sexual intercourse with Moe was a crucial fact that needed to be established because that was Moe's theory of defense. According to Moe, Studie's statements to AW were evidence of that crucial fact. As applied to Studie's statement to AW, the first element

of the present sense impression exception that Moe had to prove was that Studie perceived AB's consent to have sexual intercourse with Moe. Moe could not prove that element. The record clearly shows that Studie was not in the bedroom with Moe and AB just before and at the time the sexual intercourse occurred. Studie and IB, AB's brother, were in the living room watching a movie. As applied to Studie's statement to AW, the second element of the present sense impression exception that Moe had to prove was that Studie's statement described or explained the event he perceived, *i.e.,* AB's consent to sexual intercourse. Moe could not prove that element. His statement that he did not see anything wrong was more one of opinion rather than of fact because he was not present in the bedroom with Moe and AB. Finally, and most importantly, as applied to Studie's statement to AW, the third element of the present sense impression exception that Moe had to prove was that Studie uttered the statement while perceiving the event or immediately after he perceived it. Moe could not prove that element. The record shows that Studie made his statement to AW at least thirty-five minutes after the event (sexual intercourse between Moe and AB). In this regard, consider that the record shows this timeline:

1) After the "event," AB waited about five minutes for AW and DE to return to the trailer.

2) As soon as AW and DE returned to the trailer, AB and AW left the trailer and drove to a convenience store, called AB's parents, and then returned to the trailer, having been gone about fifteen to twenty minutes.

3) As soon as AB and AW returned to the trailer, AB and DE left the trailer to see AB's friends Mike and Bradley; AB talked to Bradley for about three minutes. The exact amount of time before AB and DE returned to the trailer is unknown, but conservatively the amount was at least ten minutes.

4) As soon as AB and DE returned to the trailer, they picked up AW and IB and drove away. They drove one to two blocks before AB emotionally told AW what Moe had done to her in the bedroom. AB got out of the car and started walking home, and AW drove back to the trailer and confronted Moe and Studie. The exact amount of time elapsed before AW returned to the trailer is unknown, but conservatively the amount was at least five minutes.

5) Adding the foregoing amounts of time, one finds that at least thirty-five minutes elapsed between the "event" and Studie's statements to AW.

[¶ 13] Research of our cases in which the present sense impression exception was in issue revealed no case in which this Court had to interpret the term "immediately thereafter" in a context similar to the time frame in this case. *See Glenn v. State,* 2003 WY 4, ¶¶ 8–12, 61 P.3d 389, 392 (Wyo.2003); *Kolb v. State,* 930 P.2d 1238, 1246 (Wyo. 1996); *Young v. State,* 849 P.2d 754, 766 (Wyo.1993). A dictionary definition of the word "immediately" is "without interval of time; straightway." Merriam–Webster's Collegiate Dictionary 578 (2000). The authors of a leading evidence treatise inform us that

[t]he time requirement is strict, for it is the major factor in assuring trustworthiness.... The phrase "immediately thereafter" accommodates the human realities that the condition or event may happen so fast that the words do not quite keep pace, and proving a true match of words and events may be impossible for ordinary witnesses, so it would be foolish to require a statement to be truly simultaneous with the event or condition. The exception allows enough flexibility to reach statements made a moment after the fact, where a small delay or "slight lapse" ... is not enough to allow reflection, which would raise doubts about trustworthiness.

More significant delays—those measured in minutes or hours ... bar resort to F.R.E. 803(1) because they do permit time for reflection and lessen or remove the assurance of trustworthiness.

4 Christopher B. Mueller and Laird C. Kirkpatrick, *Federal Evidence* § 434, at 384–86 (2d ed.1994). Case law from other jurisdictions supports the treatise authors' view that

significant delays measured in minutes bar resort to the exception. For example, in *United States v. Manfre,* 368 F.3d 832 (8th Cir.2004), in which there was an intervening walk or drive between the event and the statement, the court ruled too much time had passed to call the statement a present sense impression. The court stated that "[t]he opportunity for strategic modification undercuts the reliability that spontaneity insures." *Id.* at 840. *See also Moore v. Drummet,* 478 S.W.2d 177, 181–82 (Tex.Civ.App.1972) (a thirty minute lapse between the event and the statement eliminated possibility that the statement was a present sense impression); *Young v. Commonwealth of Kentucky,* 50 S.W.3d 148, 165–66 (Ky.2001) (a seven minute lapse between event and statement); John A. Bourdeau, Annotation, *When is Hearsay Statement "Present Sense Impression" Admissible Under Rule 803(1) of Federal Rules of Evidence,* 165 A.L.R. Fed. 491 (2000). For general reading about the present sense impression exception, *see* Symposium, The Federal Rules of Evidence, *The Present Sense Impression Hearsay Exception: An Analysis of the Contemporaneity and Corroboration Requirements,* 71 Nw. U.L.Rev. 666 (1976); Franci Neely Beck, *The Present Sense Impression,* 56 Tex. L.Rev. 1053 (1978); Jon R. Waltz, *The Present Sense Impression Exception to the Rule Against Hearsay: Origins and Attributes,* 66 Iowa L.Rev. 869 (1981); and William Gorman Passannante, *Res Gestae, The Present Sense Impression Exception and Extrinsic Corroboration under Federal Rule of Evidence 803(1) and Its State Counterparts,* 17 Fordham Urb. L.J. 89 (1989).

[¶ 14] Because we review evidentiary rulings against an abuse of discretion standard, it is evident that the meaning to be given the phrase "or immediately thereafter" is a matter for the exercise of sound judicial discretion. The phrase should not be used to admit statements that do not fit within the rationale of the exception. Studie's statement to AW approximately thirty-five minutes after the event does not fit within that rationale.

[¶ 15] Based upon the above and foregoing analysis, we find no error. We affirm Moe's judgment and sentence.

VOIGT, Justice, dissenting, with which STEBNER, District Judge, Retired, joins.

[¶ 16] While I concur with the rationale and result of this limited opinion, I continue to dissent for the reasons set forth in *Moe v. State,* 2005 WY 58, ¶ 27, 110 P.3d 1206, 1215 (Wyo.2005) (Voigt, J., dissenting).