2007 WY 162

**Norbert Robert SCHULTZ, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 06–229.

Supreme Court of Wyoming.

Oct. 17, 2007.

82

Representing Appellant: Ronald G. Pretty, Cheyenne, Wyoming.

Representing Appellee: Patrick J. Crank, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Eric Alan Johnson, Director, Prosecution Assistance Program; Geoffrey Gunnerson, Student Director, Prosecution Assistance Program; Brian J. Hunter and Hiliary Wilson, Student Interns, Prosecution Assistance Program. Argument by Mr. Hunter.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1] For his part in a "road-rage" incident, Norbert Schultz was convicted of unlawful possession of a deadly weapon and two counts of aggravated assault and battery. In this appeal, he maintains that the trial court made several erroneous evidentiary rulings mandating reversal. We affirm.

## ISSUES

[¶ 2] Mr. Schultz states these two issues:
1. Did the court commit evidentiary errors that justify a new trial?
2. Did the cumulative effect of all trial errors adversely affect the Appellant's substantial rights?

## FACTS

[¶ 3] Brandon and Zoey Peterson were driving on Interstate 80 from Laramie toward Cheyenne. While they were passing a tractor-trailer, a small white car came up behind and flashed its high-beam headlights at them. After passing the tractor-trailer, the Petersons moved back into the right-hand lane, expecting the white car to pass. · Instead, it pulled in close behind them, with headlights still on high beam. Mr. Peterson slowed down, hoping the white car would pass. When it did not, Mr. Peterson moved over into the left lane and slowed down even more. The white car · finally passed and moved out in front, and Mr. Peterson returned to the right lane.

[¶ 4] Angry, Mr. Peterson flashed his high beams at the white car. In response, the driver of the white car slammed on his brakes. Mr. Peterson swerved into the left lane to avoid a rear-end collision, and the two vehicles drew nearly side-by-side. At that point, the driver of the white car stretched his arm out the window, aimed a handgun at the Petersons' vehicle, and fired five or six shots. Four shots hit the passenger door of the Petersons' vehicle, one breaking the window. After the shots were fired, Mr. Peterson called 911 on his cell phone and reported the incident. The white car dropped behind until the Petersons lost sight of it.

[¶ 5] Upon receiving the report of the incident, Lieutenant Guenther of the Wyoming Highway Patrol closed the eastbound lanes of Interstate 80. The officer had no description of the driver, but knew that the vehicle involved was a small, white passenger car. Mr. Schultz was one of the drivers stopped by the roadblock. Because he was driving a white car, Lieutenant Guenther approached him and said he was "investigating a possible road rage incident or some sort of drive-by shooting." Mr. Schultz denied knowing of any such incident, so the officer let him leave.

[¶ 6] Two days later, the Wyoming Highway Patrol issued a press release describing the incident and asking for assistance in locating the white car. They were contacted by a person who witnessed the entire incident, and had written down the license plate number of the white car. The license plate was registered to a vehicle belonging to Mr. Schultz. After obtaining an arrest warrant and a search warrant, Lieutenant Guenther arrested Mr. Schultz, and seized a handgun that turned out to be the one fired at the Petersons' vehicle.

[¶ 7] Eventually, Mr. Schultz was charged in district court in Albany County. At trial, Mr. Schultz contended that the prosecution did not prove that the incident occurred in Albany County. He also contended that he had fired the weapon in self-defense after the Petersons' vehicle tried to push him off the road. The jury found Mr. Schultz guilty on all three of the counts charged.

## DISCUSSION

[¶ 8] Mr. Schultz maintains that seven different evidentiary rulings made by the trial court were in error. We examine each in turn, keeping in mind that rulings on the admission of evidence are generally within the sound discretion of the trial court, and are upheld absent a clear abuse of discretion. *Sanchez v. State*, 2006 WY 116, ¶ 20, 142 P.3d 1134, 1140 (Wyo.2006). We give considerable deference to the trial court's evidentiary rulings, and uphold them on appeal if we find they had a legitimate basis. *Id.* If we conclude that an evidentiary ruling was in error, we then ask if the error was prejudicial. The appellant must show that the verdict might

have been different if the trial court had made the correct ruling. *Smyth v. Kaufman*, 2003 WY 52, ¶ 29, 67 P.3d 1161, 1169–70 (Wyo.2003).

[¶ 9] Appellant's first evidentiary challenge involves Ms. Peterson's testimony, as the prosecution's first witness, about her husband's call to 911 after the shooting:

Q. Okay. What happened as you got closer to Cheyenne?

A. As we got closer to Cheyenne, we were told—[Mr. Peterson] was told by dispatch that—

[Defense Counsel]: Objection, Your Honor, hearsay.

The Court: Overruled.

[Defense Counsel]: Continue the objection, Your Honor.

The Court: That's fine [Defense Counsel]. Go ahead.

The Witness: We were told that at a certain median, we would see a cop with his lights on. We were supposed to turn on—turn off our headlights so that only our park lights and cab lights were showing so that the cop knew it was us. At the next median, we were to pull over and see that cop.

Mr. Schultz continues to maintain that this testimony was inadmissible hearsay.

[¶ 10] Hearsay is a statement, other than one made by the declarant while testifying, offered in evidence to prove the truth of the matter asserted. W.R.E. 801(c). When an out-of-court statement is not offered to prove the truth of the matter asserted, but instead to explain the subsequent conduct of the person who heard it, that statement is not hearsay. *Kenyon v. State*, 986 P.2d 849, 853–54 (Wyo.1999). Ms. Peterson's testimony was not offered to prove the truth of the matter asserted. It was offered to explain the Petersons' subsequent conduct in stopping to meet with the police. It was not hearsay, and the trial court had a legitimate basis for ruling it admissible.

[¶ 11] Mr. Schultz's brief hints that the testimony should have been excluded under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) because he was denied his constitutional right to confront the witnesses against him. Even a cursory reading of *Crawford* reveals that it does not apply to testimony offered "for purposes other than establishing the truth of the matter asserted." 541 U.S. at 59 n. 9, 124 S.Ct. at 1369 n. 9.

[¶ 12] Next, Mr. Schultz contends that the trial court improperly curtailed his counsel's cross examination of Mr. Peterson by sustaining an objection to an argumentative question. To evaluate this contention, the testimony must be considered in context. Mr. Peterson had testified that after he flashed his high beams, the driver of the white car slammed on the brakes, and Mr. Peterson swerved into the left lane to avoid a collision. Counsel for Mr. Schultz continued with this cross examination:

Q. When you swerved after he hit his brakes, did you do anything else?

A. Anything else like what?

Q. Well, I want to know. Did you do anything else? When he hit his brakes and you testified on Direct that you swerved, did you do anything else?

A. I swerved into the left lane just kind of re-collected for a second, because I just about got in a wreck.

Q. Did you do anything else with your vehicle?

A. Just drove straight down the road.

Q. Okay. Well, what I don't understand is, you were one car length behind him, correct?

A. Yeah.

Q. You flashed your lights, correct?

A. Yeah.

Q. He hit his brakes?

A. Yeah.

Q. Okay, you swerved?

A. Yeah.

Q. Okay. Now, I would expect when he slammed on his brakes, his speed got slower, did it not?

A. Yeah.

Q. And you didn't hit him?

A. No.

Q. You swerved, correct?

A. Yes.

Q. All right. Yet here we are. He's in front of you. He slams on his brakes. You didn't slow your speed down. You swerve. He is slowing down yet he is now still beside you?

A. Well, I would have had to hit my brakes so I didn't hit him—

Q. Well—

A. —as I swerved.

Q. I specifically asked you, Mr. Peterson, if you did anything else besides swerve. Now you are saying, I swerved and I hit my brakes. Now, which one did you do? Did you swerve or did you swerve and hit your brakes?

A. Well, I did both. I just thought that kind of comes with swerving is—so you don't run into them.

[Prosecution]: Your Honor, I would object that this is argumentative.

The Court: The objection is sustained.

Mr. Schultz claims it was an abuse of discretion for the trial court to sustain the objection, because counsel for Mr. Schultz was denied the opportunity to demonstrate inconsistencies in Mr. Peterson's testimony.

■ [¶ 13] W.R.E. 611(a) provides as follows:

> The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

Under this rule, the trial court has "wide discretion in controlling the mode and order of interrogating witnesses to effectuate an efficient and orderly trial process." *Sutherland v. State*, 944 P.2d 1157, 1162 (Wyo. 1997). We uphold decisions concerning the examination of witnesses unless the trial court "flagrantly abused that discretion." *Seaton v. State Highway Comm'n, Dist. No. 1*, 784 P.2d 197, 202 (Wyo.1989).

■ [¶ 14] Our caselaw indicates disapproval of argumentative questions. *Talley v. State*, 2007 WY 37, ¶ 11, 153 P.3d 256, 260 (Wyo.2007); *Cederburg v. Carter*, 448 P.2d 608, 611 (Wyo.1968). *See also Friesen v. Schmelzel*, 78 Wyo. 1, 9, 318 P.2d 368, 370 (Wyo.1957) ("[T]here was no true attempt to impeach, but rather an effort to discredit by an argumentative question."). An argumentative question is one that does not attempt to solicit information, but challenges the witness with inferences from testimony already in evidence. "For instance, evincing disbelief in his demeanor, the cross-examiner might ask ... 'How can you reconcile those statements?'" 1 Kenneth S. Broun, *McCormick on Evidence* § 7, at 28 (6th ed.2006). The questions that prompted objection in Mr. Schultz's case were these: "I specifically asked you, Mr. Peterson, if you did anything else besides swerve. Now you are saying, I swerved and I hit my brakes. Now, which one did you do? Did you swerve or did you swerve and hit your brakes?" The question is argumentative and the district court properly sustained the objection.

■ [¶ 15] This analysis also applies to another of Mr. Schultz's suggestions of error. Lieutenant Guenther testified on direct examination that bullets found in the gun seized from Mr. Schultz's home were hollow points. A report from the Senior Analyst of the State Crime Laboratory, admitted by stipulation, indicated that the bullets were round points. After suggesting inconsistency between hollow points and round points, counsel for Mr. Schultz asked Lieutenant Guenther, "Do you think that you are more qualified as to firearms than Robert Christensen, senior analyst of the State Crime Laboratory who the State has already—we have already agreed is an expert as to firearms and trajectory?" The trial court reasonably exercised its discretion in sustaining the prosecution's objection that this question was argumentative.

■ [¶ 16] Mr. Schultz's next assertion of error involves the six bullets found in his gun when it was seized. The trial court admitted the bullets into evidence over an objection to their relevance. Again, to assess the trial court's ruling, it is necessary to consider the context. Five or six bullets were fired at the Petersons' vehicle. The magazine clip of Mr. Schultz's gun held eight

bullets, but only six were in it when the gun was seized.

[¶ 17] Relevant evidence is evidence having any tendency to make the existence of any fact of consequence to the action more probable or less probable. W.R.E. 401. The prosecution suggested that the six bullets raised an inference that Mr. Schultz had a habit or practice of not loading the clip to full capacity. This was relevant because it made it more probable that Mr. Schultz had fired every bullet in the clip at the Petersons' vehicle, and cast doubt on his claim that he fired only to keep the Peterson vehicle from running him off the road. In addition, if four of six bullets (two-thirds) struck the Petersons' vehicle rather than four of eight (one-half), it was more probable that Mr. Schultz was aiming at the Petersons' vehicle, not firing into the air as he claimed. The trial court did not abuse its discretion in ruling that the six bullets were relevant evidence.

[¶ 18] Mr. Schultz further contends that the trial court improperly admitted evidence that the bullets were hollow points, information he contends was "designed to inflame the jury." No such objection was made at trial, so we apply a plain error standard of review. *Sanderson v. State*, 2007 WY 127, ¶ 16, 165 P.3d 83, 89 (Wyo.2007). However, Mr. Schultz's brief contains no plain error analysis, and no cogent argument or pertinent authority to support the contention. We decline to consider it further. *See Kinstler v. RTB South Greeley, LTD.*, 2007 WY 98, ¶ 10, 160 P.3d 1125, 1128 (Wyo.2007).

[¶ 19] Next on Mr. Schultz's list is testimony from Lieutenant Guenther that the incident took place in Albany County. Mr. Schultz contends that, because venue was at issue, this testimony about the location of the incident was improper because it involved an ultimate issue to be decided by the jury, and because it presented an opinion that Mr. Schultz was guilty. The challenged testimony was elicited during the prosecution's direct examination of Lieutenant Guenther:

Q. Okay. After following up on the actual reported location of this incident, Trooper Guenther, can you, first of all, tell the jury whether or not you are familiar with the boundaries of Albany County versus Laramie County?

A. I am.

Q. Okay. And if the prior witnesses have all testified that this happened before Buford, does that mean that it happened in Albany County?

[Defense Counsel]: Objection, Your Honor. He is invading the province of the jury. That is an element to be established by the jury, not an element to be testified to by the witness.

The Court: Objection is overruled.

[Defense Counsel]: Continuing objection, Your Honor.

The Witness: Yes.

[Prosecution]: Which side of Buford is the county line on?

A. The actual shooting occurred in Albany County.

Q. Okay. And witnesses have all testified before 335. What is the actual mile marker on Interstate 80 that's the cutoff between Laramie County and Albany County?

A. Approximately 336.6.

Q. So if you are traveling eastbound on Interstate 80 at Mile Marker 335, are you in Albany County or are you in Laramie County?

A. Albany County.

[¶ 20] Opinion testimony "is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." W.R.E. 704. Still, the prosecution may not elicit opinion testimony from a witness, lay or expert, concerning the guilt of the accused. *Bennett v. State*, 794 P.2d 879, 882–83 (Wyo. 1990); *Stephens v. State*, 774 P.2d 60, 66 (Wyo.1989). This rule is narrow in scope, however, applying only where the prosecutor solicits "an express opinion as to the guilt of the defendant." *Dike v. State*, 990 P.2d 1012, 1022 (Wyo.1999). Testimony need not be excluded unless it contains "an actual conclusion about the guilt or innocence of the accused party." *Ogden v. State*, 2001 WY 109, ¶ 23, 34 P.3d 271, 277 (Wyo.2001). An interpretation of evidence by a witness, even though that interpretation is important in establishing an element of the crime and thus

leading to the inference of guilt, is not in the same category as a conclusion about the guilt or innocence of the defendant. *Saldana v. State*, 846 P.2d 604, 616 (Wyo.1993).

[¶ 21] Lieutenant Guenther's testimony that the incident took place in Albany County did not opine directly on Mr. Schultz's guilt or evidence. It provided "related information offered to assist the jury in resolving the factual issues placed before it." *Id.* at 617. The trial court did not abuse its discretion when it allowed this testimony.

[¶ 22] Next, Mr. Schultz claims evidentiary error in this testimony from Ms. Peterson on direct examination by the prosecution:

Q. Okay. And do you recall whether or not you heard [Mr. Peterson] refer to Mile Marker 335 at some point?

[Defense Counsel]: Objection, Your Honor, hearsay.

The Court: Overruled.

The Witness: What was that again? I'm sorry.

Q. Do you recall whether you heard [Mr. Peterson] say 335 to anybody sometime during that incident?

A. Yes. He said it to the 911 dispatch.

As noted above, the Petersons' location at Mile Marker 335 indicated that the incident took place in Albany County. Mr. Schultz's brief claims that the challenged evidence "eviscerated [his] defense as to venue," and that the testimony was clearly inadmissible hearsay.

[¶ 23] The State concedes that the testimony was hearsay, but asserts that it was properly admitted under an exception to the rule excluding hearsay. "A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter," is a present sense impression, and not excluded by the hearsay rule. W.R.E. 803(1). Three elements must be established to satisfy the present sense impression exception. *Moe v. State*, 2005 WY 149, ¶ 11, 123 P.3d 148, 151 (Wyo.2005). The declarant must have perceived an event or condition. Mr. Peterson perceived the event of passing Mile Marker 335. The declarant must have

uttered a statement describing or explaining the event. Mr. Peterson told the dispatcher he had just passed Mile Marker 335. The declarant must utter the statement while, or immediately after, perceiving the event. The record does not reveal the precise amount of time that passed between Mr. Peterson's noticing Mile Marker 335 and reporting that location to the dispatcher, but it does indicate that Mr. Peterson began trying to call 911 immediately after the shots were fired, and as he was calling, he saw Mile Marker 335. When his call to 911 was answered, he told the dispatcher his location. The situation is like the one described in this treatise passage, which we have previously endorsed:

The phrase "immediately thereafter" accommodates the human realities that the condition or event may happen so fast that the words do not quite keep pace, and proving a true match of words and events may be impossible for ordinary witnesses, so it would be foolish to require a statement to be truly simultaneous with the event or condition. The exception allows enough flexibility to reach statements made a moment after the fact, where a small delay or "slight lapse" ... is not enough to allow reflection, which would raise doubts about trustworthiness.

4 Christopher B. Mueller and Laird C. Kirkpatrick, *Federal Evidence* § 434, at 384–85 (2d ed.1994) (*quoted* in *Moe*, ¶ 13, 123 P.3d at 152). The time between Mr. Peterson's perception of the Mile Marker and his report to the dispatcher was not enough to allow reflection or raise doubts about its trustworthiness. The trial court did not err in admitting this evidence of a present sense impression.

24] Last on the list is Mr. Schultz's assertion that the trial court erred concerning this bit of testimony:

Q. Oh, one more question. Lieutenant Guenther, did Mr. Schultz ever ask you if the [Petersons] were okay?

[Defense Counsel]: Objection, Your Honor, relevancy.

The Court: What's the relevance, Counsel?

[Prosecution]: Your Honor, he indicated that he had no intention of hurting anybody.

The Court: Objection is overruled.

The Witness: I don't recall him ever asking if they were all right.

On appeal, Mr. Schultz continues to question the relevance of this testimony. Because aggravated assault, the crime charged, does not include the element of intent to hurt someone, Mr. Schultz maintains that it is irrelevant whether or not he intended to hurt anybody. In light of Mr. Schultz's claim of self defense, and his assertion that he only intended to fire into the air, we find no abuse of discretion in the district court's decision overruling the objection.

[¶ 25] Mr. Schultz also contends that this testimony was unfairly prejudicial, and should have been excluded under W.R.E. 403. His brief contains no explanation of why it was unfairly prejudicial, merely a bald statement that it "was patently unfair." The single case cited in support of this contention reached a conclusion that we adopt here: "Unsupported allegations that the evidence is unfairly prejudicial ... are not enough." *Pena v. State*, 792 P.2d 1352, 1355 (Wyo. 1990).

[¶ 26] Finally, we must reject Mr. Schultz's claim of cumulative error. When no errors have occurred, a claim of cumulative error cannot be recognized. *Marquez v. State*, 941 P.2d 22, 26 (Wyo.1997); *Hodges v. State*, 904 P.2d 334, 342 (Wyo.1995). We affirm the trial court's judgment in all respects.