COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Beales and Powell
Argued at Alexandria, Virginia


JOHN HENRY BUFFORD, III

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0630-08-4                      JUDGE LARRY G. ELDER
                                                    JULY 28, 2009
COMMONWEALTH OF VIRGINIA


                  FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                         John F. Daffron, Jr., Judge Designate

              Bonnie H. Hoffman, Deputy Public Defender (Office of the Public
              Defender, on briefs), for appellant.

              Karen Misbach, Assistant Attorney General II (William C. Mims,
              Attorney General, on brief), for appellee.


       John Henry Bufford, III (appellant), appeals from his jury trial convictions for assault and

battery of a law enforcement officer in violation of Code § 18.2-57(C), misdemeanor assault and

battery in violation of Code § 18.2-57, and the felony disarming of a law enforcement officer in

violation of Code § 18.2-57.02.  On appeal, he contends the trial court erred in (1) failing to

strike a juror for cause, (2) admitting a statement he made at the magistrate's office ninety

minutes after the altercation, (3) denying his proffered instructions concerning self-defense,

resisting an illegal arrest, and the use of excessive force, and (4) concluding the evidence was

sufficient to support his conviction for disarming a law enforcement officer.  We hold the trial

court committed no reversible error, and we affirm.

_____
       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

Appellant, who was in a Loudon County bar on the evening of December 16 to 17, 2006, was ejected from the bar by a group of bouncers. In the course of his ejection, he engaged in a struggle with several of the bouncers, one of whom was Brent Peterson. Appellant also struggled with a sheriff's deputy, Daniel Saleeba, who arrived on the scene after appellant was ejected from the bar and attempted to use his taser to subdue appellant. Appellant was charged for the instant offenses and was convicted in a jury trial. After sentencing, he noted this appeal.

## II. ANALYSIS

### A. MOTION TO STRIKE JUROR FOR CAUSE

A defendant has the right to trial by an impartial jury, see U.S. Const. amends. VI, XIV; Va. Const. art. 1, § 8, whose members "stand indifferent in the cause," see Code § 8.01-358; Rule 3A:14. Whether a juror remains fair and impartial is a question of fact to be resolved by the trial court because the trial court "'sees and hears the juror.'" Eaton v. Commonwealth, 240 Va. 236, 246, 397 S.E.2d 385, 391 (1990) (quoting Wainwright v. Witt, 469 U.S. 412, 426, 105 S. Ct. 844, 853, 83 L. Ed. 2d 841 (1985)); Watkins v. Commonwealth, 229 Va. 469, 480, 331 S.E.2d 422, 431 (1985). We give deference to such findings on appeal and will disturb the trial court's decision regarding juror impartiality "only upon a showing of manifest error." Weeks v. Commonwealth, 248 Va. 460, 475, 450 S.E.2d 379, 389 (1994); Watkins, 229 Va. at 480, 331 S.E.2d at 431.

In determining whether a juror is impartial, we consider "the juror's entire *voir dire*, not merely isolated statements." Lovitt v. Commonwealth, 260 Va. 497, 510, 537 S.E.2d 866, 875 (2000). A prospective juror's mere reluctance to serve is not a valid basis for disqualification. Calhoun v. Commonwealth, 226 Va. 256, 262, 307 S.E.2d 896, 900 (1983).

> It is not uncommon to discover during voir dire that prospective jurors have preconceived notions, opinions, or misconceptions

about the criminal justice system, criminal trials and procedure, or about the particular case. Even though a prospective juror may hold preconceived views, opinions, or misconceptions, the test of impartiality is whether the venireperson can lay aside the preconceived views and render a verdict based solely on the law and evidence presented at trial.

Griffin v. Commonwealth, 19 Va. App. 619, 621, 454 S.E.2d 363, 364 (1995).

Proof of a venireman's impartiality "should come from him and not be based on his mere assent to persuasive suggestions." Bradbury v. Commonwealth, 40 Va. App. 176, 181, 578 S.E.2d 93, 95 (2003). If a juror's "initial responses indicate[] a prejudice that preclude[s] [him] from fairly serving on the jury," the court may conclude he has been rehabilitated and is qualified to serve if he gives proper responses to non-leading questions. Id. at 182, 578 S.E.2d at 96.

"[U]sing or permitting the use of leading questions, those which suggest a desired answer, in the *voir dire* of a prospective juror may taint the reliability of the juror's responses." Id. at 181, 578 S.E.2d at 95.

> When asked by the court, a suggestive question produces an even more unreliable response. A juror's desire to "say the right thing" or to please the authoritative figure of the judge, if encouraged, creates doubt about the candor of the juror's responses.
>     A trial judge who actively engages in rehabilitating a prospective juror undermines confidence in the *voir dire* examination to assure the selection of fair and impartial jurors. The proper role for a trial judge is to remain detached from the issue of the juror's impartiality. The trial judge should rule on the propriety of counsel's questions and ask questions or instruct only where necessary to clarify and not for the purposes of rehabilitation. If a trial judge adheres to this role, an appellate court may not set aside the trial judge's determination of a juror's impartiality if the juror's responses, even though conflicting, support that determination.

McGill v. Commonwealth, 10 Va. App. 237, 242-43, 391 S.E.2d 597, 600 (1990) (citations and footnote omitted).

Here, in the middle of the *voir dire*, during colloquy about appellant's right not to testify and the jury's duty to draw no negative inferences from that choice, Juror Hughes said that if appellant did not testify, he "would like to know a reason; otherwise, [he] would just be wondering." The record supports a finding that the next statement made by a juror, "He's given that right," was made by Juror Hughes rather than by a different juror, as appellant argues. The trial transcript refers to every juror who spoke during *voir dire* as "THE JUROR," and on appeal, absent careful clarification by counsel at trial as to the name of the specific juror to whom each reference related, we must rely on intermittent references by counsel to indicate the identities of the various jurors who spoke. The transcript supports a finding, undisputed on appeal, that the statements, "I would like to know a reason" and "otherwise, I would be wondering," were made by Juror Hughes. It also supports a finding, undisputed on appeal, that a different juror made the subsequent statement, "I'm an elementary school teacher" and "[b]ased on my experience, I tend to believe the accuser over the student who stands over there and says nothing." It does not make clear which juror made the statement in between these two, "He's given that right."

The trial court later expressly found—based in part on the Commonwealth's notes and representations concerning the *voir dire*—that Juror Hughes "has sufficiently indicated he would follow the law." The record supports a finding that Juror Hughes rather than another juror made the statement above, "He's given that right." This statement supports the trial court's finding that Juror Hughes "has sufficiently indicated he would follow the law." Although appellant argues a different juror made this statement, he failed to present a record on appeal from which we may conclude that the trial court's finding that Juror Hughes made it is plainly wrong. See, e.g., Justis v. Young, 202 Va. 631, 632, 119 S.E.2d 255, 257 (1961) (noting the appellant bears the burden of presenting a sufficient record upon which we can determine that the trial court erred). Thus, viewing the facts in the light most favorable to the Commonwealth, although Juror

- 4 -

Hughes indicated he would wonder why appellant did not testify, he immediately confirmed his understanding of the legal principle affording appellant "that right [not to testify]," supporting the trial court's finding that he said he would follow the law.

As for Juror Hughes' subsequent colloquy with the trial court, we conclude it qualifies as a proper non-leading "question[] . . . necessary to clarify and not for the purposes of rehabilitation." McGill, 10 Va. App. at 242-43, 391 S.E.2d at 600. After the trial court inquired whether, based on earlier questioning, any of the jurors thought they could not be fair and impartial, Juror Curtin responded, "I don't think so." The trial court said, "You don't think you can do it? Appreciate your candor." When the court inquired immediately thereafter "if [any]body else [could] think of a reason," Juror Hughes responded not that he "[didn't] think" he could do it, like Juror Curtin had, but that he "[thought] [he] would have a hard time" doing it. Juror Hughes, unlike counsel, had no awareness of the fact that the trial court may have been concerned about maintaining a panel of twenty venirepersons, and thus, Hughes could not have been influenced by that possibility. Based on the phrasing of Hughes' response, the trial court was justified in asking Hughes a follow-up question to determine whether, like Juror Curtin, he thought he would be biased and unable to do his duty as a juror, or whether he thought, instead, that serving as a juror and following the law, while difficult, was nevertheless within his capabilities. Juror Hughes responded, "I think I could sit and do it."

This response, viewed in conjunction with Juror Hughes' earlier recognition of an understanding that appellant had a right not to testify, supported the trial court's ruling that Hughes was qualified to sit and that disqualification for cause was not required.

### B. ADMISSIBILITY OF APPELLANT'S SUBSEQUENT STATEMENTS

About ninety minutes after appellant's arrest, while he and Officer Saleeba were at the magistrate's office, appellant, who was "angry" and "yelling," told Saleeba, "You're going to

have to kick my ass. I want you to. I'll have your job. And, I'll see you without your badge and your gun, and you'll see what happens then." When the trial court attempted to solicit testimony about these statements from Officer Saleeba, appellant objected that they were of minimal relevance and highly prejudicial. The trial court ruled the testimony was more probative than prejudicial and admitted it. Appellant challenges the admission of that testimony on appeal.

Evidence is relevant when it has a "logical tendency, however slight, to prove a fact in issue in the case." Winston v. Commonwealth, 268 Va. 564, 596, 604 S.E.2d 21, 39 (2004). Relevant evidence is admissible only if its probative value outweighs its prejudicial effect. Ragland v. Commonwealth, 16 Va. App. 913, 918, 434 S.E.2d 675, 678 (1993). Determining whether the probative value of the evidence outweighs its prejudicial effect is within the discretion of the trial court and may be reversed only for an abuse of that discretion. See, e.g., Coe v. Commonwealth, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986); cf. Scott v. Commonwealth, 228 Va. 519, 526-27, 323 S.E.2d 572, 577 (1984) (holding that where evidence of other bad acts or crimes is relevant, an accused is not entitled "to have the evidence 'sanitized' so as to deny the jury knowledge of all but the immediate crime for which he is on trial").

Appellant was being tried for assaulting Officer Saleeba and taking his weapon. To support a conviction for each of these offenses, the Commonwealth was required to prove appellant's intent. See Code §§ 18.2-57(C), -57.02; Adams v. Commonwealth, 33 Va. App. 463, 534 S.E.2d 347 (2000) (assault and battery). The fact that appellant threatened the officer verbally ninety minutes after his arrest and was still angry and combative at that time was probative of his intent when he struck the officer and took his weapon. See Canipe v. Commonwealth, 25 Va. App. 629, 645, 491 S.E.2d 747, 754 (1997) (noting that statements and conduct of an accused after the events that constitute the charged crime also are relevant circumstantial evidence of intent). We also conclude the trial court did not abuse its discretion in

holding this evidence was more probative than prejudicial, especially in light of other testimony in the record, admitted without objection, that at the scene of the arrest, appellant struggled with and cursed at Saleeba and other officers involved in subduing him for several minutes after appellant had grabbed and thrown away Saleeba's taser.

Given our holding that the trial court did not abuse its discretion in admitting this evidence, we necessarily also conclude it did not abuse its discretion by allowing the Commonwealth to offer evidence of appellant's specific statements rather than limiting the Commonwealth to offering evidence only of his general demeanor.

### C.  PROFFERED JURY INSTRUCTIONS

Appellant contends the trial court erred in refusing his proffered instructions concerning self-defense, resisting an illegal arrest, and the use of excessive force.  We hold the refusal of these instructions did not constitute reversible error.

"Both the Commonwealth and the defendant are entitled to appropriate instructions to the jury of the law applicable to each version of the case, provided such instructions are based upon the evidence adduced."  Simms v. Commonwealth, 2 Va. App. 614, 616, 346 S.E.2d 734, 735 (1986).  In reviewing the trial court's refusal to grant appellant's proffered jury instructions, we view the evidence in the light most favorable to appellant and the instruction.  See, e.g., Boone v. Commonwealth, 14 Va. App. 130, 131, 415 S.E.2d 250, 251 (1992).

The trial judge commits error by not instructing the jury on a matter when, in the absence of such instruction, the jury may make findings based upon a mistaken belief of the law.  See Martin v. Commonwealth, 218 Va. 4, 6-7, 235 S.E.2d 304, 305 (1977).  However, "[w]hen granted instructions fully and fairly cover a principle of law, a trial court does not abuse its discretion in refusing another instruction relating to the same legal principle."  Stockton v. Commonwealth, 227 Va. 124, 145, 314 S.E.2d 371, 384 (1984).  The trial court also "may not

[instruct the jury in such a way that it] 'single[s] out for emphasis a part of the evidence tending to establish a particular fact.'" Terry v. Commonwealth, 5 Va. App. 167, 170, 360 S.E.2d 880, 882 (1987) (quoting Woods v. Commonwealth, 171 Va. 543, 548, 199 S.E. 465, 467 (1938)).

### 1. Self-Defense

Self-defense is an "affirmative defense[] for which the accused has the burden of persuading the fact finder that he or she acted in defense of self or another to the degree necessary to raise a reasonable doubt about his or her guilt." Lynn v. Commonwealth, 27 Va. App. 336, 352, 499 S.E.2d 1, 9 (1998). The force used "must not be excessive and must be reasonable in relation to the perceived threat." Foster v. Commonwealth, 13 Va. App. 380, 383, 412 S.E.2d 198, 200 (1991). A defendant need not be threatened with deadly force or serious bodily harm in order to be entitled to act in self-defense, but "less than deadly force must be met with a proportionally reduced response." John L. Costello, Virginia Criminal Law and Procedure § 33.2[2] (4th ed. 2009).

> It is not essential to the right of self-defense that the danger should in fact exist. If it reasonably appears to a defendant that the danger exists, he has the right to defend against it to the same extent, and under the same rules, as would obtain in case the danger is real. A defendant may always act upon reasonable appearance of danger, and whether the danger is reasonably apparent is always to be determined from the viewpoint of the defendant at the time he acted.

McGhee v. Commonwealth, 219 Va. 560, 562, 248 S.E.2d 808, 810 (1978).

Although this is not a purely objective, "reasonable person" test, neither is it a purely subjective test; it includes an element of reasonableness, judged from the defendant's perspective. See Yarborough v. Commonwealth, 217 Va. 971, 975, 234 S.E.2d 286, 290 (1977) ("[B]are fear that a person intends to inflict serious bodily injury on the accused, however well-grounded, unaccompanied by any overt act indicating such intention, will not warrant killing such person."); see also Costello, supra, § 33.2[3] (positing that a review of Virginia's

case law on this issue indicates the Supreme Court's ostensible rejection of the "reasonable man" standard, while retaining the requirement that the particular defendant must have "'reasonable grounds to believe'" self-defense is necessary, "is stating a distinction which really does not signal a difference" and "is unduly troublesome because its language does not repudiate the 'reasonable man' test, even if it appears to do so" (quoting Perkins v. Commonwealth, 186 Va. 867, 877, 44 S.E.2d 426, 430 (1947)).  The defendant "must have believed and must have had reasonable grounds to believe, at the time [he acted], that he was in . . . danger."  Perkins, 186 Va. at 877, 44 S.E.2d at 430; see Perricllia v. Commonwealth, 229 Va. 85, 93-94, 326 S.E.2d 679, 684-85 (1985) (in murder case, approving jury instruction that provided, in part, "if you further believe that *the defendant reasonably feared, under the circumstances as they appeared to him*, that he was in danger of being killed or that he was in danger of great bodily harm, then the killing was in self-defense and you shall find the defendant not guilty" (emphasis added)).

### a.  Self-Defense Against Bouncer Brent Peterson

Although appellant proffered instructions relating to his alleged use of self-defense against Brent Peterson, appellant presents no argument on this issue in his brief.  Rule 5A:20(e) provides that the opening brief shall include "[t]he principles of law, the argument, and the authorities relating to each question presented."  If appellant's "failure to strictly adhere to the requirements of Rule 5A:20(e)" is significant, we may treat the issue as waived.  Jay v. Commonwealth, 275 Va. 510, 520, 659 S.E.2d 311, 317 (2008); Parks v. Parks, 52 Va. App. 663, 664, 666 S.E.2d 547, 548 (2008) (applying Jay and Rule 5A:20(e)).

Appellant did not testify and never specifically articulated, either in argument or on brief, how the evidence supported the proffered self-defense instructions in relation to his hitting Peterson.  In determining whether the trial court erred in rejecting the proffered instruction, we must view the evidence in the light most favorable to that instruction.  Here, the record contains

two basic versions of the facts, and neither supports the giving of a self-defense instruction in relation to appellant's hitting Peterson.

Appellant's witness, Crystal Smith, testified she had a clear view of everything that went on outside the bar and that she saw the bouncers come through the door and "[throw appellant] out[, causing him to] hit the ground." Smith testified that appellant never hit anyone after the bouncers brought him outside. Thus, her testimony does not provide a scintilla of evidence for his proffered instruction that if he hit Peterson, he did so in self-defense.

The only evidence in the record indicating the circumstances surrounding appellant's punching Peterson was that after the group of bouncers had dropped appellant on the ground, appellant jumped up and punched Peterson, one of the bouncers who had carried appellant outside. Several of the witnesses testified that as Peterson turned to go back into the club, appellant jumped up and punched him from the side or behind. The front door bouncer, Dante Villegomez, testified to a slightly different version of events, stating he saw appellant hit Peterson after the officer arrived and appellant had knocked the taser out of the officer's hand. Villegomez testified Peterson "started coming towards here to see what happened, and then that's when [appellant] went and hit Brent [Peterson] in the face, punched Brent in the face." Neither of these versions of events indicated that Peterson was engaged in any behavior that entitled appellant to act in self-defense after Peterson and the other bouncers had deposited him on the ground and ended their physical contact with him.

Because appellant never specifically articulated how the evidence supported the proffered self-defense instruction in relation to his hitting Peterson and we fail to discern a basis supporting the giving of the proffered instruction, we hold that his failure to strictly adhere to the requirements of Rule 5A:20(e) is significant in this case, and we treat this portion of the question presented as waived. See Jay, 275 Va. at 520, 659 S.E.2d at 317.

### b. Self-Defense Against Deputy Saleeba

The evidence supporting this series of instructions, viewed in the light most favorable to appellant, was that, after appellant was removed from the bar by the bouncers, he was confronted by two police officers while he was attempting to put on his shoe, which had come off while he was being ejected. One of the officers "started telling [appellant], Get on the ground, get on the ground." When appellant "just didn't get on the ground" and kept fixing his shoe, "he got tased." In the light most favorable to appellant, the evidence established appellant had not struck Peterson or anyone else, and Deputy Saleeba had no knowledge that appellant had been ejected from the bar and no knowledge about anything appellant may have done before or after being ejected from the bar that might support an arrest or detention. Further, appellant made no threatening gestures or movements toward Deputy Saleeba and attempted to grab the taser only after Saleeba had fired it at him without success and then advanced toward appellant to "drive stun" him by bringing the taser into direct contact with appellant's chest. After grabbing the taser, appellant threw the taser away rather than trying to use it on Saleeba. Appellant did not touch Saleeba again until Saleeba "went after him" "to grab him" "for hands on [contact]" in his continuing effort to try to handcuff appellant.

In addition to instructing the jury on the elements of the charged offenses, the burden of proof, principles of circumstantial evidence, and other basic legal principles, the trial court instructed the jury in part as follows:

> Probable cause to effect an arrest exists where the facts and circumstances within the officers' knowledge reasonably show that it is more likely than not that a crime has been committed.
> On arrests, an officer may arrest an individual without a warrant for a misdemeanor committed in his presence.
> An officer may arrest an individual without a warrant for assault and battery when such arrest is based on probable cause upon a reasonable complaint of the person who observed the offense.

- 11 -

A citizen has a duty to submit to a lawful arrest. However, if a lawful arrest is accomplished by the use of unreasonable force, then a citizen has a right to resist the use of such unreasonable force.

In so resisting, the citizen may use only that force reasonably necessary to repel the unreasonable force. If there is an unlawful arrest, then a citizen has a right to use reasonable force to resist an unlawful arrest.

When making a lawful arrest, a law-enforcement officer may use that degree of force that's reasonably necessary to effect an arrest.

An arrest is the detention of a person by an officer. It does not require that the person be physically touched. It is sufficient that the person be within the power of the officer and under his control.

\* \* \* \* \* \* \*

Whether the deputy used excessive force in effecting the arrest of [appellant] is for you to decide based on the totality of the evidence.

Whether the officer acted reasonably in his use of force is to be determined by applying an objective standard. That is, what would a reasonable officer have done when faced with the same circumstances?

Assuming without deciding that the evidence, viewed in the light most favorable to appellant, provided the scintilla of evidence necessary to support the granting of one or more instructions on self-defense in relation to appellant's encounter with Deputy Saleeba, see State v. Johnson, 719 N.W.2d 619, 630-31 (Minn. 2006) (rejecting the view that a defendant must testify to prove his state of mind and holding that he may prove his state of mind via circumstantial evidence), we hold any error in refusing those instructions was harmless on the facts of this case.

The following test is applicable to an assessment of whether non-constitutional error is harmless:

"If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but slight effect, the verdict and the judgment should stand . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that

- 12 -

> substantial rights were not affected. . . . If so, or if one is left in grave doubt, the conviction cannot stand."

Turman v. Commonwealth, 276 Va. 558, 567, 667 S.E.2d 767, 772 (2008) (quoting Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731 (2001)) (applying both this test and the language of Code § 8.01-678, which provides that "'When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . [f]or any . . . defect, imperfection, or omission in the record, or for any error committed on the trial'").

As the jury was instructed, an evaluation of whether the arresting officer made an unlawful arrest or used excessive force is judged under a Fourth Amendment standard of objective reasonableness. See, e.g., Graham v. Connor, 490 U.S. 386, 388, 109 S. Ct. 1865, 1867-68, 104 L. Ed. 2d 443, 450 (1989) (excessive force); Limonja v. Commonwealth, 8 Va. App. 532, 538, 383 S.E.2d 476, 480 (1989) (en banc) (lawfulness of arrest). Self-defense, by contrast, includes both a subjective and objective component—the defendant "must have believed and must have had reasonable grounds to believe, at the time [he acted], that he was in . . . danger." Perkins, 186 Va. at 877, 44 S.E.2d at 430; see Perricllia, 229 Va. at 93-94, 326 S.E.2d at 684-85.

Because the jury convicted appellant for the charged offenses despite the instructions regarding the right to use force to resist both (a) an unlawful arrest and (b) excessive force used to effect a lawful arrest, the jury necessarily rejected appellant's theory of the case and concluded both that appellant punched Peterson and that Deputy Saleeba's use of his taser to subdue appellant did not constitute the use of excessive force to effect appellant's arrest for that offense on the facts of this case. This rejection also necessarily compels the conclusion that the jury found appellant knew he had committed the battery justifying his arrest. Thus, it could not have "reasonably appear[ed]" to appellant that Deputy Saleeba lacked probable cause to arrest him for

- 13 -

that offense. See McGhee, 219 Va. at 562, 248 S.E.2d at 810. It also could not have "reasonably appear[ed]" to appellant that Deputy Saleeba's use of the taser after appellant refused his repeated requests to "get on the ground" constituted excessive force. See id. In light of these implicit factual findings, whether appellant subjectively believed the arrest was unlawful or the force used was excessive would not change the outcome of the self-defense issue. Cf. Turner v. Commonwealth, 23 Va. App. 270, 276-78, 476 S.E.2d 504, 507-08 (1996) (holding where the jury was instructed on first- and second-degree murder and convicted the defendant of first-degree murder, any error in having refused to instruct on voluntary manslaughter was harmless because "[t]he verdict . . . compel[led] the conclusion that [the jury] would never have reached a voluntary manslaughter verdict" even if properly instructed), aff'd, 255 Va. 1, 492 S.E.2d 447 (1997). Because the jury found Deputy Saleeba had probable cause to arrest appellant and did not use excessive force to do so, we may conclude without usurping the jury's fact-finding function that, if the court had instructed the jury on self-defense, the jury nevertheless would have rejected appellant's claim of self-defense.

Thus, we hold that any error in refusing appellant's proffered self-defense instructions relating to Deputy Saleeba was harmless.

### 2. Resisting an Illegal Arrest and the Use of Excessive Force

Appellant proffered the following three instructions, which the trial court refused:

> In determining whether or not the officer used excessive force in his attempt to arrest [appellant] you are to consider the totality of the evidence. The force used is to be measured in relation to the severity of the crime for which the accused was being arrested, the nature and extent of the threat posed by the accused, the degree of resistance being provided by the accused, and any attempts by the accused to evade arrest by flight.

> If, upon considering all of the evidence in the case, you have a reasonable doubt as to whether or not Deputy Saleeba used reasonable force in arresting [appellant], you must resolve that doubt in favor of [appellant] and find the force was unreasonable.

- 14 -

> If, upon considering all of the evidence in the case, you have a reasonable doubt as to whether or not Deputy Saleeba had probable cause to arrest [appellant], you must resolve that doubt in favor of the defendant and find Deputy Saleeba did not have probable cause to arrest [appellant].

We hold the trial court's refusal of these instructions was not error.

The trial court instructed the jury that the Commonwealth was required to prove every element of each offense beyond a reasonable doubt and that appellant had no burden to produce any evidence. As quoted above, it also gave the jury instructions regarding what constitutes probable cause for an arrest, and it instructed the jury that a citizen has a right to resist an unlawful arrest and that an objective standard applies in determining if an officer used excessive force in effecting an arrest. The instructions the trial court gave fairly covered the evidence and the relevant legal issues, and the trial court could properly have found the instructions at issue would have placed undue emphasis on certain portions of the evidence.

Thus, we hold the trial court did not err in refusing the proffered instructions regarding resisting an illegal arrest and using excessive force.

### D. SUFFICIENCY OF THE EVIDENCE TO PROVE FELONY DISARMING OF AN OFFICER

Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, granting to the evidence all reasonable inferences fairly deducible therefrom. See, e.g., Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). The credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination. Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989).

Code § 18.2-57.02 provides as follows:

> Any person who knows or has reason to know a person is a law-enforcement officer . . . who is engaged in the performance of his duties as such and, with the intent to impede or prevent any such

- 15 -

person from performing his official duties, knowingly and without the person's permission removes a chemical irritant weapon or impact weapon from the possession of the officer or deprives the officer of the use of the weapon is guilty of a Class 1 misdemeanor. However, if the weapon removed or deprived in violation of this section is the officer's firearm or stun weapon as defined in § 18.2-308.1, he shall be guilty of a Class 6 felony.

Appellant challenges only the sufficiency of the evidence to prove he acted with "the intent to impede or prevent [the law enforcement officer] from performing his official duties."

Intent, like any element of a crime, may, and usually must, be proved by circumstantial evidence, Servis v. Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988), such as a person's conduct and statements, Polk v. Commonwealth, 4 Va. App. 590, 595, 358 S.E.2d 770, 773 (1987). See Brown v. City of Danville, 44 Va. App. 586, 596-98, 606 S.E.2d 523, 528-29 (2004) (applying these standard principles permitting circumstantial evidence to provide proof of intent under an ordinance proscribing, "'by threats or force, knowingly attempt[ing] to intimidate or *impede . . . any law-enforcement officer . . . lawfully engaged in the performance of his duties as such,*'" which "closely resembles" Code § 18.2-460, Virginia's obstruction of justice statute, and holding that the defendant's "persistent[] and forceful[] refus[al] to be subdued" permitted the "reasonabl[e] infer[ence]" that he acted with the intent "to impede [the officers] in their efforts to place him under arrest," which was sufficient to support the determination that he acted with the intent to prevent them from performing their law enforcement duties (emphasis added)). "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). "[T]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993).

- 16 -

Here, the only reasonable hypothesis flowing from the evidence is that when appellant disarmed Deputy Saleeba he did so with the requisite intent to impede or prevent Saleeba from performing his duties. Deputy Saleeba, who was in uniform and holding his taser out as he would a firearm, identified himself and ordered appellant five times to put his hands behind his back so that Saleeba could finish detaining him. Appellant, who was facing Saleeba during this period of time and already had a handcuff on one wrist, ignored Saleeba's commands, came toward Saleeba in a threatening manner, and twisted Saleeba's arm to forcibly remove the taser from his hand, throwing it to the ground and saying "The taser isn't shit." When Saleeba attempted to subdue appellant with his bare hands, appellant continued to struggle until the bar's security guards came to Saleeba's aid. Ninety minutes later in the magistrate's office, appellant was still "angry" and "violent" and making threats toward Deputy Saleeba. This evidence supports the finding that when he disarmed Deputy Saleeba, he acted with the intent to "impede or prevent" Saleeba "from performing his official duties." That appellant may also have acted with the intent to avoid the pain or disability associated with being stunned does not negate a finding of an intent to disarm Saleeba. See Moody v. Commonwealth, 28 Va. App. 702, 707-08, 508 S.E.2d 354, 356-57 (1998) (holding fact that perpetrator in stolen car was attempting to escape parking lot and motioned pedestrian out of his way did not preclude finding that perpetrator, who accelerated and did not swerve as he approached pedestrian, formed specific intent to run over pedestrian if he did not move).

III.

For these reasons, we hold the trial court did not err in failing to strike the challenged juror for cause, admitting the statement appellant made at the magistrate's office ninety minutes after the altercation, denying his proffered instructions concerning self-defense, resisting an

illegal arrest, and the excessive use of force, or concluding the evidence was sufficient to support his conviction for disarming a law enforcement officer.  Thus, we affirm.

<u>Affirmed.</u>